JOHN S. RANNEY v. JAMES DONOVAN.

*Contract—Real-estate brokers—Agent for buyer and seller at once —Public policy—Dividing commissions—Evidence.*

1. Evidence of a *verbal* option to sell real estate is competent where no question arises as to the enforcement of a conveyance under it,—which has been executed,—but is offered in a suit by the holder of the option to recover his share of the profits realized on a resale of the land by a third party.

2. A plaintiff may state '' contents of a receipt presented to him by the defendant, for . ertain sum in full of all claims, which plaintiff refused to sig , and returned to· the defendant, with-

out producing the paper or giving notice to the defendant to produce it.

3. A broker who merely brings the parties together, and has no hand in the negotiations between them, they making their own bargain without his aid or interference, can legally receive compensation from both of them, although each was ignorant of his employment by the other.

4. Where the owner places land in the hands of a broker for sale, at a fixed price, who agrees with a second broker, without the knowledge of the owner, that if he will find a purchaser at a specified *increased* price they will divide the profits, and the second broker agrees with a third broker that he may find a purchaser at a still further fixed increased price, and that they shall divide equally whatever he may secure above said last named price, such last contract is not void on the ground of public policy because the land owner and first broker are ignorant of it.

Error to Branch. (Loveridge, J.) Argued November 13, 1889. Decided December 28, 1889.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*H. H. Barlow,* for appellant, contended:

1. An option on real estate must be in writing, under the statute of frauds, and it was error to admit parol proof of the fact that Phinney had such an option. An option carries with it the right to sell the land within a limited time, and power to enforce conveyance of the land in case a sale is made, and it must be evidenced by a written instrument; citing *Colgrove v. Solomon,* 34 Mich. 494.

2. It was error to admit the testimony of the witness Ranney as to the contents of the receipt. Both parties resided and did business in Chicago. No notice was given to defendant to produce the paper, nor was its absence in any way accounted for. The well known rule contended for is applicable to receipts; citing *VanNess v. Hadsell,* 54 Mich. 560.

3. The remaining points of counsel are stated in the opinion, with his citation of cases.

*F. A. Lyon,* for plaintiff, contended:

1. If the option was in writing, the ruling was correct, because

the rule excluding parol evidence as to written instruments does not apply when the writings are not between parties to the suit; citing Abbott's Trial Ev. 294, 295; Greenl. Ev. § 279; and if verbal, still the ruling was correct, because this action is not brought to enforce a verbal option on land, or a verbal contract concerning land, but to recover money due on a completed and fulfilled contract in writing.

2. The testimony of Ranney as to the contents of the receipt was admissible. It had not been signed and had not become operative as to any one, but was simply submitted to Ranney by Donovan, and his signature requested, which was refused; and Ranney had a right to state what kind of an instrument Donovan had requested him to sign. A contract submitted to a party, but not signed, is not a written contract within the rule excluding parol proof of its contents; citing Whart. Ev. § 1016; and a mere receipt is not within the rule; citing *Bailey v. Cornell*, 66 Mich. 107; and Donovan was a non-resident of the State, and therefore notice to produce was unnecessary; citing *Burton v. Driggs*, 20 Wall. 125-134; *Forrest v. Forrest*, 6 Duer, 102.

MORSE, J.    Plaintiff sued defendant in *assumpsit* upon the following contract:

"CHICAGO, Aug. 1, 1885.

"This agreement, entered in and agreed to by James Donovan, of the first part, and John S. Ranney, of the second part.

"That the said Donovan, in case of the sale of certain tracts of pine land in town 37 and 38, range 17 and 18, state of Wisconsin, is to pay the said John S. Ranney one-half of any price that may be obtained above one dollar and sixty-five cents per thousand ($1.65); the guaranty cut being 23,000,000 on the green tract and 25,000,000 on the red; the net price of the red tract to be forty-seven thousand dollars ($47,000). It is hereby mutually agreed that the said Donovan and Ranney shall share equally in all margins obtained above said price.

"J. S. RANNEY.      [L. S.]<br>"JAS. DONOVAN.      [L. S.]

"*Chicago, Aug.* 1, 1885."

The following facts were shown by plaintiff: In the year 1885, Sawyer, Goodman & Co., of Chicago, were the owners of a tract of pine land containing 2,240 acres, and

Wilhelm Boeing, of Detroit, was the owner of another tract of pine land, containing 1,680 acres. These tracts were situated in the state of Wisconsin. In that year, George S. Phinney, John O'Callahan, and John S. Ranney, the plaintiff, and James Donovan, the defendant, were real-estate brokers, doing business in Chicago and elsewhere. In the early part of 1885, Sawyer, Goodman & Co. entered into an arrangement with Phinney whereby it was agreed that, if Phinney should bring said Sawyer, Goodman & Co. a purchaser for the "Goodman Tract" at the price of $44,800, he should receive a commission of $2,600. At the same time, O'Callahan had an arrangement with Boeing, whereby it was agreed that, if O'Callahan should bring said Boeing a purchaser for said "Boeing Tract" at the price of $33,000, he was to receive a commission of $3,000. O'Callahan and Phinney had agreed to work together in procuring a purchaser or purchasers for both tracts of land. Phinney went to Ranney, and gave to him the plats of these lands, upon which plats the Goodman tract was marked red and the Boeing tract green, and said:

"If you can find a purchaser for these lands we will divide."

Subsequently, Phinney, Ranney, and O'Callahan, as the two former testify, made an agreement to share the profits on these two tracts of land together with a fourth person. O'Callahan denies that he was a party to any such arrangement. Phinney and Ranney agree that they fixed the price of the lands to be sold by them at $1.65 per 1,000, and they were to divide the difference between $77,800 and the sum they should realize from the sale at $1.65 per 1,000 among the four.

Ranney made the contract with Donovan without the knowledge or consent of Phinney or the others. Ranney

and Phinney finally agreed to sell the Goodman tract, as Phinney testifies, for $47,800, and to divide the difference between that sum and $44,800. Ranney introduced Donovan to Phinney, and Phinney brought Donovan and Sawyer, Goodman & Co. together. Donovan paid the latter $44,800, and they deeded him the land. He paid Phinney $3,000 at the time the sale was closed, or soon thereafter. Ranney was not present when the sale was made.

Ranney claims that he is entitled in this suit to one-fourth of the difference between $44,800 and $47,000, to wit, $550. Donovan sold this tract for $50,000, or at $3,000 advance, one-half of which profit Ranney also claims, making in all, upon the Goodman tract, the sum of $2,050.

In relation to the Boeing tract, and the sale thereof, the plaintiff knows nothing, except by hearsay. Phinney, who testifies for plaintiff, and O'Callahan, who was a witness for defendant, tell different stories of the transaction. Phinney testifies that after Donovan wanted the lands he wrote to O'Callahan, who lived at Hancock, Michigan, and who, in response to his letter, came to Chicago. Ranney, Phinney, and O'Callahan met in Chicago. Donovan was also present. It was there agreed that Donovan and O'Callahan should go to Detroit, and close the matter up with Boeing. The testimony of Phinney and plaintiff tends to show that this land was to be taken by Donovan in the same way as the Goodman tract; the difference between the amount realized at $1.65 per 1,000 and $33,000 to be divided between Phinney, plaintiff, O'Callahan, and another. O'Callahan testifies that he knew nothing of Ranney in this transaction; that he received a letter from Donovan, and went to Chicago upon its receipt; that at this time his option on the

Boeing tract had expired; that he went to Detroit with Donovan, and there saw Boeing and his agent, Zeba T. Graham, and there they made a trade for the land, Donovan paying Boeing $33,000 for the same. Donovan paid O'Callahan $3,000 commission on this sale. Donovan afterwards sold this tract at $2 per 1,000. This tract was guaranteed in the contract at 23,000,000 feet; but plaintiff admits that it only amounted to, and was sold on the basis of, 21,300,000 feet, while Donovan claims he only realized $2 per 1,000 on 20,300,000 feet. Plaintiff claims on this sale one-quarter of the difference between $35,145 and $33,000; such difference being $2,145, and one-quarter of the same, $536.25. He also claims under the contract with Donovan one-half of $7,455; that being the difference between 21,300,000 at $2 per 1,000, to wit, $42,600, and the same number of feet at $1.65 per 1,000, to wit, $35,145.

Plaintiff's claims sum up as follows:

| | |
|---|---|
| One-fourth of commission on Goodman tract | $ 550 00 |
| One-half Donovan's profits | 1,500 00 |
| One-fourth commission Boeing tract | 536 25 |
| One-half Donovan's profits | 3,727 50 |
| | $6,313 75 |

He recovered judgment for $7,352.15. The defendant admitted making the contract, as above set forth, with plaintiff, but claims that Ranney represented to him that he held the option for these lands direct from the owners. He supposed that the only commission Ranney was to receive was the half he would get under this contract, which he understood Ranney would have to divide with three others. After the contract was made, defendant testifies that Ranney introduced him to Phinney. He asked Phinney if he was the owner, and he said he was not. Defendant then and there told plaintiff that he repudiated the contract. He thereafter acted with

Phinney and O'Callahan, and paid no further attention to plaintiff or the contract. Did not buy the lands under the contract, but by an arrangement of his own with Phinney and O'Callahan. Went with Phinney to Sawyer, Goodman & Co., and bought the land of them, and paid Phinney $3,000 for his commission. Went with O'Callahan to Detroit, and bought the land of Boeing, and paid O'Callahan $3,000 commission. He took one L. S. Baker in with him upon the Boeing tract, and paid to him one-half of the profits he made on that sale. He does not state the amount he paid to Baker, but testifies that he sold on the basis of 20,300,000 feet. This would have made Baker's half of the profits $2,727.50. Baker, however, testifies as a witness for plaintiff, that the profits were $7,455, one-half of which would be $3,727.50, and that defendant gave him a check for this amount.

We think error was committed by the court below in submitting to the jury plaintiff's claim for one-fourth of the commissions paid to Phinney and O'Callahan. It plainly appears from plaintiff's own showing that Phinney acted for plaintiff and the other brokers, with whom he was to divide the commission in this sale from Sawyer, Goodman & Co. to Donovan, and Donovan was justified in paying the commission to Phinney. Plaintiff and the other brokers must look to Phinney for their share, and not to defendant. The same principle applies to the Boeing tract, but with greater force, under the testimony, as it is doubtful if plaintiff had any claim upon the commission in that sale. If he has any such claim, he must look to O'Callahan, and not to defendant. This disposes of $1,086.25 of plaintiff's claim; and the court should have so instructed the jury, as requested by defendant's counsel. There was no testimony tending to show that Donovan ever agreed to pay this one-fourth, in either

case, to plaintiff, or that such one-fourth was demanded of him before he paid it over to Phinney and O'Callahan.

There were no errors in the admission of testimony. It was competent for plaintiff to show that he had a verbal option to sell these lands, as between him and the defendant. No question arises in this case as to the enforcement of a conveyance under this option. The land was conveyed; and the plaintiff had the right to show that he was verbally authorized by Phinney to sell the lands at a certain price, and that Phinney was authorized by the owners to sell at another price, as bearing on the questions involved in this case.

It was also proper for him to show that in a conversation with Donovan the latter presented him with a receipt, and requested him to sign it in full, on payment of $1,086.25, which receipt he read, and handed back to Donovan, declining to take that amount, or to sign the receipt, and to state what the receipt contained, without producing the same, or giving notice to Donovan to produce it. The receipt was not executed, or relied upon as an executed paper. It was simply a part of the conversation, the same as if Donovan had read to him, or handed him to read, any other written or printed communication, and kept it, or received it back again into possession. Whart. Ev. § 1016. This testimony could not have hurt the defendant, any more than a statement by plaintiff that defendant asked such a receipt from plaintiff, without having one already prepared in writing. The defendant could deny the fact sworn to in either case, and his denial would be of equal force to meet plaintiff's assertion.

Defendant's counsel requested the court to direct a verdict in behalf of his client. This was properly refused. In regard to the Boeing tract, the testimony tending to

show that Donovan was acting in that purchase under his contract with plaintiff was not very strong; but still we think there was sufficient evidence to go the jury, who were properly instructed that the burden of proof was upon the plaintiff.

It is strenuously argued here that the contract between Ranney and Donovan was against public policy, and that this should have defeated plaintiff's recovery; that the testimony shows that neither the owners of the land, nor Phinney or O'Callahan, knew of the contract between Ranney and Donovan; that Ranney was the agent of Phinney for the sale of these lands, and was getting both a commission from the seller and the buyer; and that he was neglecting his duty to his principal, Phinney, when he undertook to gain additional compensation for himself. The counsel for defendant cites the following cases in support of his contention: *Scribner v. Collar,* 40 Mich. 375; *Walker v. Osgood,* 98 Mass. 348; *Smith v. Townsend,* 109 Id. 500; *Rice v. Wood,* 113 Id. 133; *Lynch v. Fallon,* 11 R. I. 311; *Everhart v. Searle,* 71 Penn. St. 256; *Raisin v. Clark,* 41 Md. 158; *Morrison v. Thompson,* L. R. 9 Q. B. 480; *Oscanayan v. Arms Co.,* 103 U. S. 261.

These authorities, in my opinion, do not apply. In this case neither the buyers nor sellers of these lands were defrauded by the transaction, and they are not complaining. Both Sawyer, Goodman & Co. and Boeing had fixed the price upon their lands before this contract was made, and had in effect agreed that the brokers Phinney and O'Callahan could sell their lands at a certain price to them, without reference to what the brokers might get for the same from the buyers. Donovan, from his own showing, was a broker, and was buying these lands to sell again. The price at which he took them was also fixed when he made his contract; and he paid without question the difference between what he was to pay the

brokers Phinney and O'Callahan and the purchasers to such brokers, and yet did not pay more than his contract price with plaintiff. It is claimed that Phinney would be defrauded if plaintiff is allowed to recover, as he testifies that he did not know that plaintiff was to have half of Donovan's profits, and that such arrangement was made by Ranney without his consent, and contrary to the agreement he had with Ranney. But it appears, from Phinney's testimony as well as Ranney's, that they had agreed to sell the Goodman tract at $47,000, and the Boeing tract at $1.65 per 1,000, before the contract was entered into between Ranney and Donovan. The case, then, stands like this: The owner of lands says to broker A., "You may sell this land for me at a certain price," say $10,000. Broker A. says to broker B., "You may find a purchaser at $11,000, and we will divide the profits." Broker B. then makes a contract with broker C. that C. may sell the land for him at $11,000, and share with him half of all C. may obtain over the $11,000. C. sells for $12,000, and refuses to divide with B., upon the ground that the contract, not being known to A. or the owner of the land, is against public policy. If this contention be correct, then there can be but one middleman between the buyer and the seller, without the consent and knowledge of all the parties connected with the sale and purchase. We do not think the law goes as far as this. The rule invoked by defendant's counsel applies to such a case as *Scribner v. Collar, supra*. In that case no price was fixed by the seller, but Scribner and Potter agreed to take the farm property of Collar for sale or exchange at a commission of $2\frac{1}{2}$ per cent. At the same time they had a similar contract with persons by the name of Warren, who also had a farm for sale or exchange. Of this Collar was ignorant. A trade between Collar and the Warrens was effected. Here the Court held Scribner and Pot-

ter were the agents of both parties to the trade. They were not employed simply as middlemen to bring the parties together.

"It [the contract] conferred authority to negotiate, and reposed confidence, and contemplated that the plaintiffs should act in defendants' interest, and should exert their judgment and their influence in their behalf."

For this reason it was held that public policy would not admit of Scribner and Potter being in the employ of both parties.

In this case at bar, Ranney had no power to negotiate; and no confidence was reposed in him that he should use his best judgment and efforts to get a large price for the lands. All he was to do was to find a purchaser at a certain sum, fixed and agreed upon. When he did this, he was entitled to all he could get out of the purchaser over and above such price. The owners of the land were not to pay him anything, and his compensation from Phinney depended upon the agreement made between them to sell the land at a fixed price above what the owners asked, and to share the profits together. Neither his efforts nor judgment were to be employed to get a greater price. It may be that there was such a copartnership or joint dealing between himself and Phinney as would entitle Phinney to share in his contract with Donovan (see *Grant v. Hardy,* 33 Wis. 668); but this could not affect his right to recover from Donovan. Donovan agreed to pay Ranney one-half of the profits made by him over and above a fixed sum, which was named, for each piece of land; and there was no fraud upon him in the transaction. He made the agreement with his eyes open; and it could make no difference to him to whom he paid the purchase price, which was fixed by his contract. He does not complain of any fraud upon himself, but sets up the fraud of Ranney against

Phinney in his defense. This he cannot do, as he is not concerned with it, if it exists. *Hardy v. Stonebraker,* 31 Wis. 640. It has been held, and I think correctly, that a broker who merely brings the parties together, and has no hand in the negotiations between them, and where they make their own bargain without his aid or interference, can receive legally a compensation from both of them, though each was ignorant of his employment by the other. *Mullen v. Keetzleb,* 7 Bush, 253; *Herman v. Martineau,* 1 Wis. 151; *Grant v. Hardy,* 33 Id. 668; *Rupp v. Sampson,* 16 Gray, 398; *Collins v. Fowler,* 8 Mo. App. 588; *Orton v. Scofield,* 61 Wis. 382 (21 N. W. Rep. 261); *Barry v. Schmidt,* 57 Id. 172 (15 N. W. Rep. 24).

This is the case here. No confidence was reposed in Ranney, by anybody, that he would exert his skill or judgment to get as large a sum as possible for the lands, or, on the other hand, to procure the same for as low a price as possible. He was simply acting as a go-between,—a middleman,—to bring the buyer and seller together, to make their own bargain; the seller having fixed his price to start on. This was all he did. The fact that he received the right to act through or from another middleman, or turned the matter over into the hands of another broker, upon a contract with him to share half of the price obtained by such broker over and above the price fixed by him and Phinney as the selling price of the lands in their hands, does not render the transaction void as against public policy, and is no defense against the contract by Donovan. *Stewart v. Mather,* 32 Wis. 344; *Hardy v. Stonebraker,* 31 Id. 640.

We find no other errors in the record. For those noted the judgment must be reversed, and a new trial granted, with costs of this Court to defendant.

The other Justices concurred.