BENJAMIN N. MONTROSS v. CHARLES K. EDDY AND WALTER S. EDDY.

*Real-estate brokers—Compensation from both vendor and vendee.*

1. A broker who simply brings the parties together, and has no hand in the negotiations between them, they making their own bargain without his aid or interference, can legally receive compensation from both of them, although each was ignorant of his employment by the other; citing *Ranney v. Donovan*, 78 Mich. 318.

2. A commission dealer in lands, who makes a sale under an agreement with the owners that, if he effects a sale at a price fixed by them, they will pay him for it, can recover what his services were reasonably worth.

Error to Saginaw. (Edget, J.) Argued October 26, 1892. Decided December 22, 1892.

*Assumpsit.* Defendants bring error. Affirmed. The facts are stated in the opinion.

*Wisner & Draper*, for appellants.
*George W. Weadock*, for plaintiff.

DURAND, J. The plaintiff is a commission dealer in lands, and he brings this suit for services which he claims to have performed for the defendants, in assisting them about the sale, for $90,000, of some pine timber lands, to Pitts & Cranage, of Bay City, Mich.

The plaintiff claims that in 1885 he had these same lands for sale at $50,000, and that, being in Bay City in September, 1887, a Mr. Burton, who knew of this fact, and who represented Pitts & Cranage, asked him if the lands in question had been sold, to which he responded that he did not know, upon which Mr. Burton asked him to find out, and plaintiff told him he would do so; that thereupon he went to Saginaw, and met Walter S. Eddy, the junior member of the firm of C. K. Eddy & Son, the defendants and owners of the timber, where the agreement was made upon which the plaintiff claims the right to recover. The conversation, as shown by his testimony in the record, was as follows:

"I came from Bay City, and met Mr. Eddy right below Moore's drug-store. I asked him if that timber on Hope creek—we called it the 'Hope Creek Timber'—was for sale yet, and he said, 'Yes.' I said, 'I have got a party that I don't know but I can sell it to. I have been talking with them about it.' And I said, 'What do you hold it at now?' He said, 'Ninety thousand dollars.' I said, 'I don't believe I can do anything with it.' I said, 'You have come up big. You advertised it here years ago for $50,000, and these parties knew it. You have come up so much I don't think I can sell it.' He said he would not take any less for it. I said, 'Say $80,000, and I will try and sell it.' No, he would not take that. I said, 'Say $85,000, and I will try.' He said no; he would not take less than $90,000. Well, I said, if that was the best he could do, I had no thought I could sell it,—I didn't believe I could sell it for $90,000. He said he would not take any less. I said, 'Would I, then, be getting the usual commission, if I sell at $90,000?' He said, 'No; you must get your pay from the other party.' I said, 'I wouldn't ask them for it.' I said, 'You know I had it for sale, and I wouldn't ask them to pay a commission on $90,000.' He said, 'We don't want to pay any commission.' I said, 'I won't undertake it;' and he turned to go away from me, and he said, 'Ben, if you make the sale, we will expect to pay you for it.' I said, 'All right.' I told him they were gilt-edged parties, and he would be perfectly satisfied with the parties when he knew who they

were. I said they would make a payment down, and they were gilt-edged parties.

"*Q.* What did he say?

"*A.* He said that would be all right."

After this talk the plaintiff went to Bay City, and told Pitts & Cranage what the purchase could be made for, and they sent a man with him to examine the pine growing upon the land and ascertain its amount and value. After four or five days spent in making the examination and estimate, it was reported to Pitts & Cranage, and about September 27, 1887, they concluded the purchase of the land from the defendants at the sum of $90,000. Pitts & Cranage then gave the plaintiff $500 for the services he had performed for them in respect of the purchase. Pitts & Cranage claim that the $500 was given the plaintiff in payment for his services, while the plaintiff insists that it was a mere gift, and was not in any way to be considered as a payment; but, in the view we take of the case, we do not consider that this is of any importance.

On the day the sale was consummated, the plaintiff went to the office of the defendants, in Saginaw, and after a consultation with each other they gave him their check for $250; and the plaintiff asked them, "Is that all for selling that land?" and Walter S. Eddy, one of the defendants, answered, "That is all we will pay you now." After this time the plaintiff again asked them for money, and was answered that they had no money to spare. Again, in September, 1888, he asked the same defendant for more money, when he was answered that defendants were hard up. Upon giving his note, however, for 60 or 90 days, the defendants gave him their check for $100, at which time he was told that they did not want him to come for any more money. The plaintiff claims that he was never asked to pay this note, although the defendants claim that

they sent him a letter asking him for payment, and that the plaintiff had promised to pay the $100 note subsequent to its maturity. There was no other demand made by the plaintiff for the claim in controversy until shortly before this suit was begun.

The defendants deny that they ever employed the plaintiff to sell their land, or that they promised to pay him anything for the sale, and claim that Pitts & Cranage employed the plaintiff to buy the land, and agreed to and did pay him for his services, and that plaintiff so informed the defendants. They also claim that they were never asked by plaintiff for compensation only shortly before bringing this suit, and that the $250 they paid the plaintiff was a gratuity from them; that they were under no obligation to pay it; and that the $100, given at the time the note referred to was given, was a loan by them to the plaintiff. The plaintiff introduced testimony tending to show that his services were worth 5 per cent. on the selling price of the land, but on cross-examination it was shown that commissions run as low as 1 per cent. on the purchase price of large transactions.

The case was submitted to the jury, who brought in a verdict for the plaintiff for $250.

The defendants contend that under the contract, just as plaintiff testifies to it, before he can recover anything, he must show performance on his part, and that he has failed to do so in this case. This matter was fairly submitted by the circuit judge to the jury, who by their verdict must have found that the plaintiff's version of the conversation with Walter S. Eddy in relation to the sale of this land was a correct one, and that he *did* promise plaintiff that if he effected the sale at $90,000 the defendants would pay him for it. They must also have found that the plaintiff performed his portion of the agreement, and was the instrument who brought about the sale to Pitts & Cranage.

The circuit judge instructed the jury that the plaintiff was in no event entitled to recover on the basis of commission; that there had been no agreement to pay him a commission; but that, if the jury believed that the defendants agreed to pay him for his services in making the sale, then the law assumed simply an agreement to pay him what those services were reasonably worth. The small amount found by the verdict of the jury shows that they were governed by the charge of the judge in the matter, and that they did not find a verdict on the basis of commissions. There being, upon both the making of the agreement, as stated, and also upon the performance of that agreement by the plaintiff, sufficient evidence to entitle the plaintiff to go to the jury, we cannot disturb their verdict, even if we had the inclination to do so.

Objections were made by the defendants to certain questions asked by plaintiff's counsel upon the cross-examination of Mr. Cranage, one of the defendants' witnesses, in reference to a conversation with the plaintiff about the amount of pine upon the land, and also as to whether the $500 given to the plaintiff by Pitts & Cranage was a present, and was to be returned upon certain conditions. Objection was also made by the defendants to the question put to the plaintiff as to whether or not, in the talk with Mr. Cranage about the time this suit was begun, Mr. Cranage had said that he knew nothing that would help or hurt either side, only he knew that the Eddys ought to pay well for it; that it was the worst deal that they ever had; but which objections were overruled, and the testimony received.

If there was error in the ruling of the court upon these propositions in relation to the admission of this testimony, we think it was error without prejudice. The verdict of the jury would seem to indicate they were not prejudiced by anything that Mr. Cranage had said in reference to the

question. And as to whether the payment by Pitts & Cranage to the plaintiff of $500 was a present, or was paid under an agreement made by them for his services, we deem it immaterial. If the defendants are liable at all, it is upon their agreement to pay the plaintiff for his services if he made a sale of this land at $90,000. Nothing was left to his discretion. He had nothing to do with the price. He had simply to find a purchaser willing to give the price asked, and it can be of no importance whatever to the defendants whether or not those purchasers also paid the plaintiff for any services he may have rendered them. As was said in *Ranney v. Donovan*, 78 Mich. 318:

"A broker who simply brings the parties together, and has no hand in the negotiations between them, they making their own bargain without his aid or interference, can legally receive compensation from both of them, although each was ignorant of his employment by the other."

All that the plaintiff was to do was to find a purchaser at a certain sum fixed and agreed upon. Neither his efforts nor judgment were to be employed to get a greater price. When he did this, and the sale brought about by him as middleman was consummated, he was entitled to a reasonable compensation for his services, if the jury believed his version of what the contract was, as they evidently did do. If the plaintiff made any misstatements to Pitts & Cranage in reference to the amount of pine on the land, or to its quality. and thereby induced them to pay the sum asked for it by the defendants, certainly the defendants cannot complain; nor can they be heard to say that, because Pitts & Cranage paid or gave plaintiff $500 for services performed by him in bringing about the purchase, therefore they are relieved from paying him, if they agreed to do so. He was simply acting as a go-between to bring the buyers and sellers together, to make their own bargain.

This is all he did do, and either or both parties, in such a case, would be legally bound to pay such sum as was agreed upon for the services rendered.

We do not find any prejudicial error in the case.

The judgment will be affirmed, with costs of this Court to the plaintiff.

The other Justices concurred.