[Argued December 18, 1893;  decided January 8, 1894.]

## JAMESON *v.* COLDWELL.
### [S. C. 35 Pac. Rep. 245.]

1. TRIAL BY THE COURT—FINDINGS OF FACT ON MATERIAL ISSUES.—The law is well settled in Oregon that in an action tried by the court without the intervention of a jury, findings must be made on all the material issues. *Drainage District* v. *Crow*, 20 Or. 535, and *Pengra* v. *Wheeler*, 24 Or. 532, cited and approved.

2. CONTRACT BY CORPORATION THROUGH ITS OFFICERS—COMMISSIONS.— Officers of a corporation acting on its behalf occupy a peculiarly confidential and fiduciary position, and must act solely for the best interests of the corporation, without reserving any secret advantage to themselves. A contract reserving a secret benefit to the officers is voidable by the corporation within a reasonable time after discovering the facts,

and, having done so, the officers cannot recover any benefit or advantage that may have been promised them.

3. PRINCIPAL AND AGENT—RATIFICATION OF CONTRACT—COMMISSIONS.— Where a corporation has rescinded a contract made in its name by its officers because of a secret commission contracted for by such officers for themselves, the fact that the corporation again purchases the same property for the same price, less the secret commission, is not such a ratification of the original contract as to make the seller liable to the officers for their commission.

4. RATIFICATION OF CONTRACT BY CLAIMING DAMAGES.— Where an agent whose unauthorized contract of purchase has been repudiated by his principal sues the seller for the secret commissions promised him, the seller does not by setting up a counterclaim for damages ratify the contract so as to make him liable for the commissions.

APPEAL from Multnomah: HARTWELL HURLEY, Judge.

This action was brought by H. M. Jameson and A. F. Johns against Geo. L. Coldwell, to recover certain commissions alleged to be due for making a sale of a quantity of lumber for the defendant. The agreement for commissions was as follows:—

"This agreement, made the eleventh day of February, eighteen hundred and eighty-eight, between George L. Coldwell of Skamokawa, Washington Territory, of the first part, and H. M. Jameson and A. F. Johns of Los Angeles, state of California, the second part,—Witnesseth: That the said George L. Coldwell, in consideration of the services of the party of the second part, in making sale of four million feet of lumber, agrees to pay to the said parties of the second part, two and one half per cent on all moneys received in payment for said lumber and freight, and further agrees that he will pay said parties two and one half per cent on all future sales made to the parties purchasing said lumber, providing future sales are made on above basis. This percentage due and payable at Los Angeles, when said Coldwell is paid for said lumber and freight, or any part thereof. In witness whereof we have

hereunto set our hands, the day and year above written.

"GEO. L. COLDWELL,

"H. M. JAMESON,

"A. F. JOHNS."

The sale relied on is evidenced by the following written agreement:—

"This agreement, made on the first day of March, eighteen hundred and eighty-eight, by and between Geo. L. Coldwell of Skamokawa, Washington Territory, of the first part, and the Western Lumber Company, a corporation doing business in the city of Los Angeles, state of California, party of the second part,—Witnesseth: The party of the first part agrees to sell and deliver to the said party of the second part, four cargoes of assorted lumber,—three million six hundred thousand feet, more or less,—to be be delivered on the lighters at the port of San Pedro. The said lumber to be of Oregon pine and spruce, and of such size as may be ordered by said party of the second part, and as ordered by them, as near as the log will make. The party of the second part agrees to pay for said lumber the price as per schedule of the Pacific Pine Lumber Company of San Francisco, with seven and one half per cent added, the first cargo to be paid cash on delivery and the balance of the cargoes also in cash, at least the amounts of freight, and the balance in sixty days, in bankable paper. Lighters to be furnished by the said party of the second part at the ship.

"GEO. L. COLDWELL,

"A. L. JOHNS, President.

"H. M. JAMESON, Secretary.

"Witness:   J. H. DARLING."

Afterwards this second agreement was modified by written indorsement thereon as follows:—

"Los Angeles, April 9, 1888.

"The above contract is modified and amended to read as follows: The said party of the second part agrees to pay for said lumber the price as per schedule of the Pacific Pine Lumber Company of San Francisco, of January seventh, eighteen hundred and eighty-eight, and no per cent added.   Otherwise to be as made.

"Geo. L. Coldwell.

"Witness:   A. Nicholls."

On a trial before a jury the defendant had a verdict, and, judgment having been entered thereon, the case was brought here for review, and was reversed: 23 Or. 144. The amended complaint sets out the above agreements, and alleges that under the second agreement Coldwell sold and delivered about seventeen hundred thousand feet of lumber, and that he could and ought to have delivered the entire four million feet, but did not do so; and prays for the commission on the entire four million feet, amounting to twenty-three hundred dollars. The amended answer admits the delivery of the lumber, but claims that it was under the modification of the second agreement; denies that Coldwell was in fault in not delivering all the lumber that the contract called for; and then set up the following separate defense: " That the plaintiffs, in making the sale of lumber mentioned in the amended complaint were acting as the trustees and agents of the Western Lumber Company, and were the only persons representing said lumber company in negotiating and consummating the sale of said lumber. That the agreement set out in the amended complaint whereby plaintiffs were to receive a commission of two and one half per cent on the sale of said lumber to the Western Lumber Company, was made without the knowledge or consent of said Western Lumber Company, or

any member thereof, except the plaintiffs. That the said Western Lumber Company never, at any time, consented to, or ratified, the said agreement made by plaintiffs, to obtain a commission on the sale of said lumber to said company. That immediately upon the discovery of the fact by the said Western Lumber Company that the plaintiffs were to receive a commission on the sale of said lumber to it, the said lumber company repudiated the contract made by plaintiffs for the purchase of said lumber, and refused to receive any lumber under said contract. That said written contract to pay the plaintiffs a commission of two and one half per cent on said sale of lumber to the Western Lumber Company, was made and secretly entered into by the plaintiffs while acting as the trustees and agents of the Western Lumber Company, for the purpose of defrauding said lumber company." The answer further set up two counterclaims for damages for being obliged to sell under the modified contract. The cause was tried, by consent of the parties, without a jury, and the findings of fact and conclusions of law being for the defendant upon all the issues, except his counterclaims, judgment was rendered for his costs and disbursements against the plaintiffs, from which they appeal.                                        AFFIRMED.

*Mr. Edward B. Watson (Mr. James Finley Watson on the brief), for Appellants.*

*Mr. John T. McKee (Messrs. Raleigh Stott, Whitney L. Boise, and Geo. C. Stout on the brief), for Respondent.*

Opinion by MR. JUSTICE MOORE.

The appellants requested the court to find and declare the facts upon the following issues: "1. Whether any negotiations were had between the Western Lumber

Company, or any person claiming or assuming to act for or to represent it as an officer or agent thereof, in relation to the purchase of the lumber involved in this action, after its articles of incorporation were signed on March first, eighteen hundred and eighty-eight, and before the written agreement for said purchase between said company and said George L. Coldwell of the same date was executed. 2. Were the terms of such purchase, or any of them, as they appear in said written agreement, finally adjusted and agreed upon in the course of said negotiations? 3. Did Andrew Nicholls, as general manager of said company, act for or represent said company during said negotiations? 4. Did the plaintiffs, H. M. Jameson and A. F. Johns, or either of them, act for or represent, or assume to act for or represent, said company during said negotiations or any of them, as officers or agents of said company? 5. Did the plaintiffs, or either of them, take any part in making said purchase, or in arranging or agreeing upon its terms, as officers of said company, or otherwise, except to introduce said George L. Coldwell to said Andrew Nicholls, as general manager of said company, after its articles of incorporation were signed, until said agreement had been drawn up by said Andrew Nicholls, and they requested by him to execute the same in their official capacity on behalf of said company?" This request the appellants contend the court denied, and made no findings upon these issues, and this is assigned as error in the notice of appeal. Their theory is that Andrew Nicholls, the general manager of the corporation, negotiated the terms of the contract with the defendant, and the only part they took in the transaction was to introduce the defendant to him. A broker who merely brings the parties together, and has no hand in the negotiations between them, they making their own bargain without his aid or interference, can legally receive

a compensation from both, though each was ignorant of his employment by the other: *Ranney* v. *Donovan*, 78 Mich. 318, 44 N. W. Rep. 276; *Rupp* v. *Sampson*, 16 Gray, 398, 77 Am. Dec. 416; *Montross* v. *Eddy*, 94 Mich. 100, 34 Am. St. Rep. 323, 53 N. W. Rep. 916.

1. The pleadings present these issues, and the bill of exceptions shows that the plaintiffs testified that the general manager was directed to make this contract; that he drew it up, and they, at his request, signed it, but that they had nothing to do with the negotiations. It also shows, by the deposition of Andrew Nicholls, that the plaintiffs at that time were the only persons who represented the company. The law is well settled in this state that in an action tried by the court without the intervention of a jury, all the material issues must be passed upon: *Drainage District* v. *Crow*, 20 Or. 535, 26 Pac. Rep. 845; *Pengra* v. *Wheeler*, 24 Or. 532, 34 Pac. 354.

The findings of the court applicable to plaintiff's request are as follows:  " 2. That pretending to act as such officers of said company, and agents thereof, and for and on its behalf, they made and entered into the agreement set out in the answer filed herein, and on pages two and three of the amended complaint, with the defendant, on the first day of March, eighteen hundred and eighty-eight, by which the defendant agreed to sell and deliver to said company three million six hundred thousand feet, more or less, of Oregon pine and spruce lumber, to be delivered on the lighters at the port of San Pedro, California, and for which the said company agreed to pay the said Coldwell the price as per schedule of the Pacific Pine Lumber Company of San Francisco, California, with seven and one half per cent added." "10. That the articles of incorporation of the said Western Lumber Company were drawn up and signed by the incorporators thereof on the first day of March, eighteen

hundred and eighty-eight, a few hours before the written agreement mentioned in the complaint." "11. That Andrew Nicholls, the general manager of said company, wrote out the contract between said company and the defendant, and had full knowledge of its terms, but neither said Nicholls nor the said company, except the plaintiffs as president and secretary thereof, had any knowledge of the agreement between the plaintiffs and defendant for the allowance of said commission to the plaintiffs for the sale of said lumber to said company."

2.    These findings show that the contract was executed a few hours after said articles of incorporation were signed; that the plaintiffs assumed to act for and represent said corporation as officers and agents thereof in relation to the purchase of said lumber, and it must be presumed that the negotiations were not completed until the contract was executed, and that the terms of purchase as they appear in said written agreement were fully adjusted and agreed upon in the course of said negotiations, and hence it was necessary to find upon plaintiffs' first and second requests.    The court finds that the plaintiffs, as president and secretary of said corporation, and agents thereof, and for and on its behalf, not only entered into, but made, the agreement with the defendant a few hours after the articles of incorporation were signed, and that at that time they represented the company, and it was their duty as such agents and trustees to promote its general welfare and protect its interests, and hence it was unnecessary to find upon plaintiffs' third and fourth requests.

If the plaintiffs as such agents made the contract with the defendant, they necessarily must have taken part in negotiating with him for the purchase of the lumber, and in agreeing upon the terms of payment, and therefore the court inferentially finds that the plaintiffs did

more than merely introduce the defendant to the general manager, and this precludes the necessity of a finding upon the fifth request. The findings cover all the issues made by the pleadings, and show that the plaintiffs were not merely brokers who introduced the parties, but that they, as its officers and agents, took part in the negotiations, and made the contract, at the same time having a secret arrangement with the defendant for commissions. It is safe to presume that if the defendant could afford to sell the quantity of lumber he agreed to deliver and pay the plaintiffs a commission of two and one half per cent of all moneys received on account thereof, he could equally have afforded to remit that amount to the corporation. It was the duty of the plaintiffs to negotiate for the purchase of lumber for the corporation upon the best possible terms, and any advantage to be obtained in consequence of their efforts should inure to its benefit, and hence it follows that these commissions were, in equity and good morals, the property of the corporation. They could doubtless have been assigned to the plaintiffs by the corporation, or if it had, at the time the contract was executed, been aware of the agreement, and assented thereto, that would have amounted to a voluntary donation to them. The amended answer alleges that, aside from the president and secretary, the corporation at that time had no knowledge of the secret agreement between the plaintiffs and defendant for commissions, and the court so finds upon this issue. The plaintiffs then could have no moral right to a sum of money that was due the corporation, and as they were its agents and trustees, whose duty it was to advance its interests, and by their endeavors make the capital stock pay a dividend, they can have no legal right to these commissions. To permit the officers of a corporation to appropriate its property without rendering a just equivalent, is a fraud

upon its creditors and stockholders, for whom the funds, property, and franchises are held in trust.

The case of *Atlee* v. *Fink*, 75 Mo. 100, 42 Am. Rep. 385, is very similar to the one at bar. In that case the defendant was employed upon a salary to superintend the construction of buildings for his employers, who would pay no bills for labor or lumber until certified by defendant to be correct. The defendant entered into a secret agreement by which he was to receive a commission of two and one half per cent on lumber sold by plaintiffs to defendant's employers upon his recommendation. In an action to recover the commission, it was held that the contract was void. HENRY, J., said: "One employed by another to transact business for him has no right to enter into a contract with a third person, which would place it in his power to wrong his principal in the transaction of the business of the latter, and which would tempt a bad man to act in bad faith toward his employer. The interests of the defendant's employers, and those of plaintiffs, as buyers and sellers, were antagonistic, and defendant could not serve two masters in a matter in which there was such a conflict in their interests." It was also held in the same case, that it was wholly immaterial whether the agreement with the defendant was ratified or not by the plaintiffs, and that the ratification of the contract would not have eliminated the element which rendered it invalid. It would doubtless be presumed that Andrew Nicholls, the general manager, who wrote the contract and was present when it was executed, represented the corporation, (*Sacalaris* v. *Eureka R. R. Co.* 18 Nev. 155, 1 Pac. Rep. 835, 51 Am. Rep. 737), but this presumption is overcome by the finding of the court that the plaintiffs made and entered into the contract with the defendant. The plaintiffs, as agents and trustees of the corporation, without its consent, could not make a

contract on its behalf with the defendant, in which they
had a private interest:   Morawetz, Private Corp. § 517.
They could not, therefore, with respect to these com-
missions, act for themselves and for the corporation, nor
occupy a position in conflict with its interests:   *Wardell*
v. *R. R. Co.* 103 U. S. 651.   Such a contract is not neces-
sarily void *per se* in the sense that it is incapable of rati-
fication, but it may be avoided by the corporation within
a reasonable time:   Greenhood, Public Policy, 296.   This
it did as soon as the secret agreement between the plain-
tiffs and defendant became known, and refused to ac-
cept any lumber from the defendant under the contract.

3.   The appellants contend that the modification by
which the seven and one half per cent above the said
schedule price was remitted amounted to a ratification of
the original contract, and made the defendant liable for
their commissions.   Ratification is the approval by the
principal of the unauthorized act of an agent.   If the
agent carries out the instructions of the principal in the
execution of a contract on his behalf, the minds of the
principal and of the other contracting party have met
and agreed upon the terms, and the contract is of binding
force from the date of its execution.   If, however, the
agent make a contract for his principal without authority
therefor, it cannot bind the latter because it is not his act,
and the minds of the parties have never met or agreed
upon the terms.   If the principal ratify the act of the
agent, the contract becomes valid, and in all things relates
back to the date of its execution.   There are certain acts
on the part of the principal which are construed by the
courts as a ratification.   Thus, if he, with full knowledge
of all the terms of a contract made by his agent, accept
any portion of the fruits resulting therefrom, he is held to
have accepted and ratified the whole:   Wharton, Agency,
§ 72.   The corporation· did not accept any fruits of the

transaction, but repudiated the whole contract within a reasonable time, as it had a right to do under the circumstances, and then made another for itself; and the fact that it adopted some of the language of the old contract, made it no less a new one. The defendant not having received or accepted any of the fruits of the old contract, and the seven and one half per cent above the said schedule price, which was the consideration for the agreement to pay the commissions, having been remitted by the new contract, there was no ratification of the old one nor any part thereof.

4. The appellants also contend that the defendant ratified the contract by his counterclaim for damages. Mr. Wharton, in his work on Agency, § 90, states the accepted law on that subject to be that if the principal elect to sue the agent for the proceeds, and not the damages caused by the unauthorized act, he necessarily ratifies the contract. When an agent, without authority, sells the property of his principal, the latter may waive the tort and bring an action for the proceeds, and, in doing so, he ratifies the act of the agent; but bringing an action against the agent for the damages caused by the unauthorized act can never amount to a ratification.

The contract at its inception having been unlawful because of the secret agreement, and not having been ratified, it follows that the judgment must be affirmed.

AFFIRMED.