# HARTEN v. LOFFLER.*

PRINCIPAL AND AGENT; BROKERS; FRAUD; CONTRACTS.

1. The law will not permit real-estate brokers and those occupying fiduciary relations to put themselves in a position where they are subjected to the demands of conflicting duties; and, without at least full knowledge and consent of both the vendor and vendee, even if then, a person cannot act as agent and representative of both in the same transaction.

2. A real-estate broker who acts as agent of the vendor and vendee without the knowledge of both is guilty of a breach of his contract, and commits a fraud by his concealment, and a contract under such conditions is *contra bonos mores*, and the law will refuse to enforce it.

3. In an action by a real-estate broker against the owner of real estate to recover a commission for procuring a purchaser of the property, with whom the owner made a contract of sale which he afterwards refused to consummate, the trial court errs in refusing to direct a verdict for the defendant, where it appears that the broker originally approached the owner at the suggestion of the prospective purchaser, for the sole purpose of getting the property for the latter; that, without disclosing the name of the purchaser to the owner, he made an offer for the property at the price named by the purchaser, which was less than that fixed by the owner, which offer the owner refused; that his explanation of his many subsequent visits to the owner, which resulted in the contract of sale at the original price fixed, was that he was trying to get the property for the purchaser; that, accepting his statement as true that the owner employed him to act as his agent and promised to pay him a commission, he tried to induce the owner to reduce the price in the interest of the purchaser, and that, according to his own statement, he was trying to get the property as cheap as he could for the purchaser, and trying to get all he could for the owner.

---

*Brokers.*—The authorities on the question of fraud and secret dealings of real-estate broker as affecting commissions are reviewed in a note to *Leathers* v. *Canfield,* 45 L.R.A. 33.

4. *Quære*, whether one who acts as middleman, merely bringing vendor and vendee together, to make their own contract, without aid, advice, or interference to, or on behalf of, either, may recover compensation from both without knowledge by one of such arrangement with the other.

No. 1819.   Submitted April 10, 1908.   Decided May 5, 1908.

HEARING on an appeal by the defendant from a judgment, on verdict, of the Supreme Court of the District of Columbia in an action by real-estate brokers to recover their commissions on a sale of land.                                    *Reversed.*

The COURT in the opinion stated the facts as follows:

The appellees, Andrew D. Loffler and Thomas E. Jarrell, as plaintiffs below, brought this action against the appellant, Hugh Harten, to recover the sum of $300 for services rendered in obtaining a purchaser for certain real estate in the District of Columbia.

The allegations were that defendant was the owner, on April 1, 1905, of certain land with improvements thereon, which he wished to sell. That he employed plaintiffs, who were real-estate brokers, to find a purchaser. That, on April 27, 1905, they found a purchaser, at the agreed price of $12,000, with whom the defendant entered into an agreement for the conveyance of said premises for said sum, which he afterwards refused to perform. That, in consideration of their services, defendant agreed with and promised plaintiffs to pay them the said sum of $300, which he has failed and refused to do. The declaration concluded with the common counts for money payable, for services rendered, etc.

The defendant filed pleas denying the promise, and indebtedness as alleged, on which issue was joined. Judgment for plaintiffs was entered June 21, 1906.

At that time an action brought by the purchaser for breach of the said contract against Harten was pending, and some questions involved therein were injected into this proceed-

ing.  So far as those are concerned, they were settled by the judg-
ment for plaintiff therein, which was affirmed May 7, 1907.
*Harten* v. *Loffler,* 29 App. D. C. 490.

The testimony of the plaintiffs tended to show that a contract
was entered into between Harten and Ernst Loffler, on April 27,
1905, whereby the former agreed, for a consideration of $12,-
000, of which $250 were deposited, to convey to the latter the
premises on Brightwood avenue and to transfer his license.  He
also agreed to use his efforts to secure signers for the transfer of
said license to Loffler.  It was this agreement which Harten re-
fused to perform, and the breach of which was the subject-matter
of the case above referred to.

One of the plaintiffs, Andrew D. Loffler, after proving part-
nership with Jarrell in the real-estate business, testified substan-
tially as follows:  That, about February 22, 1905, he went to see
Harten and told him that he was in the real-estate business and
had heard his place was for sale; told him he could probably
find a purchaser.  He said: "If I could get a purchaser for
$12,000 he would sell.  I knew that Ernst Loffler wanted to get
a place on the Brightwood road; he had told me he wanted a
place for a home and a barroom business.  Told him he could get
Harten's place for $12,000, and he told me to offer Harten
$11,000.  So I offered Harten $11,000 which he refused.  We
finally came to an agreement that Loffler would take it for $12,-
000.  Saw Harten with reference to this sale between February
22 and April 27, 1905, about three times a week.  I made him
an offer for E. Loffler of $11,000.  The purpose of my visits to
him was to get the property for that price, and I kept on going
to see him.  When E. Loffler was satisfied to take the place, I
told Harten I could get a buyer, and that included a commission
of 3 per cent.  He said, 'That is too much,' I said: 'Will you
be satisfied to give me $300?'  He said: 'Yes, I will pay you
for all your trouble.' "  Other testimony of the witness relating
to the description of the property intended to be conveyed, it is
unnecessary to recite for the reason that it is rendered irrelevant
by the decision in *Harten* v. *Loffler, supra.*

On cross-examination, he said that the reason he went out to

see Harten was that he had heard his place was for sale, and he knew that E. Loffler wanted to buy one on that road. "E. Loffler was one of those who told me the place was for sale. He came to me about two months before I saw Harten, and said: 'You are in the real-estate business; if you can get that place I will buy it through you.' He spoke to me again before I went to see Harten. He said I should find out if Harten's place was for sale and what he wanted for it. I said I would do it. He said he would buy it. I had no talk with him about my commission. I could not charge the man that bought the property a commission; I never did. The man that sells the property generally pays the commission." (This was objected to as not responsive to the question asked, and the same was asked to be stricken out. The refusal to do this was excepted to.) "When Harten asked me, on my first visit, for whom I wanted the place, I said, 'Never mind, I will tell you later on.' The reason for this is that, if a man has a customer for a piece of real estate, I do not think he would tell the man who the customer is; he would not need an agent then; he would sell it without an agent. Two or three weeks afterwards, I told him who the purchaser was, saying, 'Now that you are satisfied to pay me my commission, I will take the man out and show him the property.' That was the day before I took Loffler out. When Richards was writing the agreement and before it was signed I said he ought to put in it, 'subject to 3 per cent commission,' He said, 'Never mind, that is all right.' I do not think he said he had nothing to do with the commission, but will not say positively that he did not say so. I told him $300 would be satisfactory, and he said: 'All right; I will pay you for your trouble. My word is my bond.' It is a fact that I went out there for the sole purpose of getting this business and this place for Ernst Loffler. He was the customer I had for the place. Loffler told me to offer $11,-000 for it. I told Harten I had an offer of $11,000 for it, and he said $12,000 was the lowest he would take for it. I did not tell him who made that offer. The necessity for so many visits to Harten was because I was trying to get it for $11,000. Mr. Loffler told me he would not want to pay more than that amount,

and I was trying to get it for that. I told Harten I had an offer of $11,000 for it. He always refused that. I was interested both ways; I was trying to get it as cheap as I could for Mr. Loffler, and I was trying to get all I could for Mr. Harten." He further testified that Harten offered him $100 to get him out of the trade. "He said, 'Loffler, how can I get out of this?' I said, 'The only way to get out is to turn the property over to Mr. Loffler. You are getting a fair price for it.' He threw a check book down on the table and said: 'You can get me out of it.' I told him it would not be right; it would not be business. I spoke up for Mr. Loffler. I said he had his deposit up, and he had bought the place, and his place was sold in Georgetown and that put him out of the whole thing, and the man ought to have the place."

Ernst Loffler, called by the plaintiffs, testified to the purchase, attempt to perfect the same, etc. On cross-examination he said that he had spoken to Andrew Loffler about getting a little place in the country, and he came and said he had found a place, but did not tell him at first it was Harten's. Was probably a month before the contract was signed that he had told witness it was Harten's place. "He spoke to me about Harten's place before I spoke to him about it. The first I heard about Harten wanting to sell was from Hood or Burkart. I then had a conversation with Richards about it, and after that I went to Andy Loffler and sent him to negotiate with Harten about a month before the agreement was signed. I never had any conversation with Andy Loffler about Harten's place before that time. Mr. Loffler told me about the property first. In my suit in this court against Harten, for breach of that agreement, I think I testified that, after Richards told me Harten's property was for sale, I went to Andrew Loffler and sent him to negotiate with Harten, and also testified that I told Harten that I wanted the business."

The testimony on behalf of Harten was chiefly directed to the limits of the property actually offered for sale, which was not described in the contract. In regard to the actual matter in controversy, he said that Andrew Loffler came to him and wanted to know if he would sell him the property for the same price he

had offered it for to Burkart. Said he would if the engagement with Burkart failed. He said he was in the real-estate business, and was not buying for himself, but for a friend. When asked the name of his friend, he said: "I will tell you later." I said if it is for Ernst Loffler, I will not sell to him at any price. After the deal with Burkart was off, he called again, and was told he could have it for the price named, and when asked the name of his client, said: "I will tell you in due time." About a month later he brought Ernst Loffler out. The first conversation about a commission was after Andrew Loffler had got part of the signers for a transfer of the license. He said: "Who is going to pay me my commission?" That was after the contract was signed. I said: "Whoever employed you. I haven'a got anything to do with it. I am selling my place independent of everything. I have no lawyer and am selling it on my own responsibility." He said: "Cannot you pay part?" I said: "So far as commissions are concerned, I will pay nothing. You are not entitled to anything. You are buying the place for another party. If I came down and engaged you to sell my place, I would be entitled to pay commissions then." He said: "Well, somebody will have to pay me." I said: "Whoever employed you will have to pay you." He also denied the statement of Andrew Loffler that he had produced his check book and offered him $100 to get him out of the contract.

The defendant asked the court to instruct the jury to return a verdict for him on the ground that the evidence showed that plaintiff was employed in the transaction by Ernst Loffler, and not by the defendant, as well as claiming commission upon a sale that was never made. This the court refused, and defendant excepted. The court thereafter charged the jury that whether defendant employed plaintiff to effect the sale was a question of fact for them to settle; that the burden was upon the plaintiffs to show that they were employed by Harten to sell the property, and that they sold the same pursuant to said employment; in other words, that the sale was effected by plaintiffs as the duly authorized agents of defendant, for the particular purpose of

selling this property. And second to show that he had a contract for a commission of $300. The greater portion of the charge was directed to the controversy between the defendant and the purchaser as to the boundaries of the property contracted to be sold, about which the agreement was uncertain. In conclusion, he charged that, if the plaintiff was employed to sell the whole of defendant's property, and he did sell it, the duty of the jury was to return a verdict for plaintiff for the full amount of $300. This charge was excepted to.

*Mr. Lorenzo A. Bailey* for the appellant.

*Mr. Leon Tobriner* for the appellees.

Mr. Chief Justice Shepard delivered the opinion of the Court:

The only question material to the determination of this case arises on the error assigned on the exception taken to the refusal of the court to direct a verdict for the defendant.

The law is quite liberal in its recognition of the right of a real-estate agent or broker to recover reasonable compensation from the owner of property, who, desiring to sell the same, contracts for, or accepts his services in finding a purchaser ready and able to pay the price. On the other hand, it is a thoroughly well-established principle that, out of consideration for human weaknesses, the law will not permit such brokers, and others occupying fiduciary relations, to put themselves in a position where they are subject to the demands of conflicting duties; without, at least the full knowledge and consent of both vendor and vendee, even if then, one cannot act as the agent and representative of both in the same transaction. The duty of an agent for the vendor is to obtain the highest possible price for his property; of the agent for the purchaser to buy it for the lowest price. These duties are so irreconcilable and conflicting that they cannot be performed by the same agent without danger that he will sacrifice the interests of one to the other, or both to his own when

his commission is dependent upon the consummation of the sale. If he so acts as the agent of each without the knowledge of both, he is clearly guilty of a breach of his contract, and commits a fraud by his concealment. A contract under such conditions is *contra bonos mores,* and the law, acting in harmony with morals, will refuse to enforce it. *Raisin* v. *Clark,* 41 Md. 158, 161, 20 Am. Rep. 66; *Farnsworth* v. *Hemmer,* 1 Allen, 494, 495, 79 Am. Dec. 756; *Rice* v. *Wood,* 113 Mass. 133, 135, 18 Am. Rep. 459; *Marsh* v. *Buchan,* 46 N. J. Eq. 595, 597, 22 Atl. 128; *Bell* v. *McConnell,* 37 Ohio St. 396, 399, 41 Am. Rep. 528; *Capener* v. *Hogan,* 40 Ohio St. 203; *Bollman* v. *Loomis,* 41 Conn. 581; *Murray* v. *Beard,* 102 N. Y. 505, 508, 7 N. E. 553; *Wilkinson* v. *McCullough,* 196 Pa. 205, 208, 79 Am. St. Rep. 702, 46 Atl. 357; *Warrick* v. *Smith,* 137 Ill. 504, 27 N. E. 709; *Hafner* v. *Herron,* 165 Ill. 242, 247, 46 N. E. 211.

Applying the principle above stated to the evidence offered on behalf of the plaintiffs, we are of opinion that the court should have directed a verdict for the defendant. It is clear that Andrew Loffler visited Harten at the suggestion, and on behalf of Ernst Loffler, who directed him to inquire if the property was for sale, and at what price. He said: "I went out there for the sole purpose of getting this business and this place for Ernst Loffler." That he had no agreement for, or no intention of charging, compensation for his services, if such be the case, did not prevent the relation of principal and agent from attaching, and bringing his principal under an implied promise to pay the value of his services. He did not disclose this agency to Harten. Without disclosing the name of the proposed purchaser, whom he claimed to have found, he made the authorized offer of $11,-000, which Harten declined to accede to, having fixed his price at $12,000. The many visits made were thus explained: "The necessity for so many visits to Harten was because I was trying to get it for Loffler." Accepting the truth of this statement, which must be done on a motion to direct a verdict against him, to the effect that Harten authorized him to act as his agent for sale at $12,000, and promised to pay him a commission of $3,-000, it appears that, instead of forwarding that object, as he was

in duty bound, he was trying to induce him to reduce the price in the interest of his first principal. Nor does it appear from the testimony that Ernst Loffler was informed that he was also acting as agent for Harten. The manner in which he attempted to perform these inconsistent and irreconcilable obligations to each principal appears from the following statement: "I was interested both ways; I was trying to get it as cheap as I could for Mr. Loffler, and I was trying to get all I could for Mr. Harten." This alternate persuasion was practised upon parties adversely interested, by one whom each had the right to believe was acting solely in his own interest. That Harten did not yield to his persuasion while Loffler did, does not affect the question of his right to recover from Harten for his services, either upon an implied or an express contract. The law will not give enforcement to a claim founded on such conduct.

The authorities cited on behalf of the appellee go no farther than to hold that, where one acts as a middleman, merely bringing vendor and vendee together, to make their own contract, without aid, advice, or interference to, or on behalf of, either, he may obtain compensation from both, even without knowledge by one of such arrangement with the other. *Ranney* v. *Donovan,* 78 Mich. 318, 329, 44 N. W. 276; *McLure* v. *Luke,* 154 Fed. 647; *Manders* v. *Craft,* 3 Colo. App. 236, 238, 32 Pac. 836; *Orton* v. *Scofield,* 61 Wis. 382, 384, 21 N. W. 262; *Rupp* v. *Sampson,* 16 Gray, 398, 401, 77 Am. Dec. 416; *Knauss* v. *Gottfried Krueger Brewing Co.* 142 N. Y. 70, 75, 36 N. E. 867.

Whether this doctrine be sound to the full extent of want of knowledge by the respective parties, it is unnecessary to inquire, as there is nothing in the facts of this case to which it can be applied. Andrew Loffler was no such "middleman."

For the error pointed out, the judgment will be reversed with costs, and the cause remanded for further proceedings not inconsistent with this opinion.                    *Reversed.*

A motion to recall and amend the mandate was overruled June 2, 1908.