# J. N. RICE v. J. R. DAVIS.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY.

Argued April 15, 1890—Decided October 6, 1890.

1. It is a rule of public policy that an agent for the sale of property cannot at the same time act as the agent for the purchase thereof, or interest himself therein, and thus become entitled to compensation from both vendor and purchaser: Everhart v. Searle, 71 Pa. 256; Penna. R. Co. v. Flanigan, 112 Pa. 558.

2. Such a rule, intended to be preventive of the possibility of wrong, rather than remedial of actual wrong done, should be rigidly enforced, unless it clearly appear that the persons for whose protection it is intended agreed expressly, with a knowledge of all the circumstances, to waive their rights thereunder.

3. If an agent of the owner for the sale of stock receive from a purchaser thereof compensation for his services, the fact that such receipt was with the knowledge and without the objection of the vendor, will not constitute a waiver of the rule and preserve the right of the agent to be compensated by the vendor.

Before STERRETT, GREEN, CLARK, WILLIAMS and McCOL-
LUM, JJ.

No. 235 January Term 1890, Sup. Ct.; court below, No. 118
March Term 1886, C. P.

On February 23, 1886, Dr. J. N. Rice brought assumpsit against John R. Davis. Issue.

At the trial on December 5, 1889, the plaintiff adduced evidence to the effect that he was employed by the defendant to sell for him his interest, to wit, forty shares of the capital of the Clear Spring Coal Company; that, if he sold the shares for $45,000, he was to be paid well for his services, and that he had made sale of said shares to DeWitt and Cake for the sum stated. The substance of the defendant's evidence was that, although he had put the shares into the hands of the plaintiff for sale, the plaintiff was not to be paid compensation, unless he found a purchaser for the shares at the sum of $50,000; that the plaintiff found certain purchasers at the sum of $45,000,

Opinion of the Court.

but that Cake and DeWitt, who were shareholders with the defendant, objected to one of them as a shareholder of the company, and offered to purchase the defendant's shares themselves, with the others of the proposed purchasers, for $45,000; that the defendant declined to deal with this proposition, unless he was released from the arrangement with the plaintiff; that Cake and DeWitt and the defendant himself had interviews with the plaintiff, and the latter accordingly released the defendant, and a sale by the defendant himself to Cake, DeWitt and the others at $45,000 was then completed. It was also shown that the plaintiff received from the purchasers four shares of the stock, valued at $4,500, as compensation for his services, and that these shares were so turned over to the plaintiff with the knowledge and without the objection of the defendant.

At the close of the testimony, the court, WOODWARD, J., submitted to the jury to find what the contract between the plaintiff and defendant was, answering certain points for instruction as shown in the opinion of the Supreme Court. The jury returned a verdict for the plaintiff for $800. Judgment having been entered, the defendant took this appeal assigning the answers to said points for error.

*Mr. Henry W. Palmer*, for the appellant.

Counsel cited: Everhart v. Searle, 71 Pa. 259; Penna. R. Co. v. Flanigan, 112 Pa. 558; Utica Ins. Co. v. Insurance Co., 17 Barb. 134; Campbell v. Insurance Co., 2 Wh. 55; Paley on Agency, 32.

*Mr. Alexander Farnham* (with him *Mr. F. C. Mosier*), for the appellee.

Counsel cited: Ritter v. Railroad Co., 7 W. N. 122; Reed v. Reed, 82 Pa. 420; Pearsoll v. Chapin, 44 Pa. 9.

OPINION, MR. JUSTICE STERRETT:

In reaching the conclusion embodied in their verdict, the jury must have found as a fact that plaintiff was employed by defendant to sell his stock in the Clear Spring Coal Company, and that he succeeded in doing so. If there was nothing else in the case, the judgment should be affirmed; but it was

clearly shown by plaintiff's own evidence that he received from the purchasers, for his services in the matter, four shares of the stock, worth about $4,500.

In view of that evidence, the defendant requested the court to charge that, "under the testimony of the plaintiff and his witnesses, the plaintiff received compensation from the purchasers of the Davis shares, and therefore cannot maintain this action for compensation from Mr. Davis." The plaintiff, on the other hand, asked the court to charge: "If the jury believe that Mr. Davis agreed to pay Dr. Rice a compensation for his services in effecting a sale of the interest of Mr. Davis in the Clear Spring Coal Company for $45,000 and that he effected a sale accordingly, at the price agreed on, he is entitled to recover the value of his services to defendant; and, it being admitted by the defendant and shown by documentary evidence in the case, that the defendant knew Dr. Rice was to receive four shares of stock from the purchasers, and the defendant consenting, the fact of Dr. Rice's receiving said shares does not operate to prevent the plaintiff's recovering."

These points were answered together, as follows: "If the jury find that Dr. Rice, under the agreement with Davis, made sale of the property at a price fixed by the defendant himself, and thereby entitled himself to compensation for his services rendered, then the fact that he received four shares of stock from the purchasers, in the manner described by the witnesses and with the full knowledge of the defendant as to the nature of the transaction, would not prevent, in our judgment, his recovering in this action. We say, further, in this connection; the evidence in this case shows that all the parties were members of the same company; that DeWitt and Cake knew that Dr. Rice was claiming a commission from Davis; and it also shows that Davis knew that Dr. Rice was to have four shares of the stock of the company. Knowledge of these facts by all the parties, without complaint or dissent at the time, and without any evidence of bad faith in the transaction, takes the case out of the class of cases to which we have been referred, where it has been held that an agent is not to be allowed compensation from both parties to a sale. With every disposition to recognize the force of the decisions to which the learned gentlemen have called our attention, we do not think that they ap-

Opinion of the Court.

ply to the case in hand, and control our charge on the legal questions involved, in the manner argued by defendant's counsel." This answer is an emphatic affirmance of the plaintiff's point, and a refusal to charge as requested by the defendant. It is contended that in so doing the learned judge unintentionally erred, and we think he did.

The principle, underlying this case, that an agent for the sale of property cannot at the same time act as agent for the purchase thereof, or interest himself therein, and thus entitle himself to compensation from both vendor and vendee, is grounded on the infallible declaration that "no man can serve two masters." As a rule of public policy, it is distinctly recognized in our text-books on agency, and in numerous adjudicated cases, among which are Everhart v. Searle, 71 Pa. 256; Penna. R. Co. v. Flanigan, 112 Pa. 558, and cases there cited. It forbids that any one intrusted with the interests of others shall in any manner make the business an object of personal interest to himself, because, from a frailty of nature, one who has the power will be too readily seized with the inclination to use the opportunity for serving his own interests at the expense of his principal. The various forms of agency to which the principle is applicable, and the reasons for upholding it, etc., are referred to in Everhart v. Searle, supra. The controlling facts in that case were briefly these: Flagg, the owner of land, employed Searle to sell the same, and agreed to give him for his services all that he obtained over $125 per acre. Searle found several applicants for the land, but he finally agreed to give Everhart the preference, for which the latter agreed to pay him $500. Flagg and Everhart were brought together, and the sale was concluded. They each refused to pay Searle anything, because, by acting for both of them he had undertaken to serve two masters. Suit was then brought against Everhart, and judgment obtained for the $500, and interest. On behalf of the defendant in error, it was contended that Searle neither did nor contemplated any wrong against either vendor or vendee; that neither of them was induced to act by any false representation made by him; that Flagg got his price for the land, and Everhart secured the preference for which he was willing to pay $500, and hence there was no error in permitting the plaintiff to recover. Referring to the position thus assumed, Chief Jus-

Opinion of the Court.

tice THOMPSON said there was plausibility and seeming force in the argument that Flagg, the plaintiff's principal in the sale, was not injured by the arrangement with the defendant, etc., but it is unsound. The transaction is to be regarded as against the policy of the law. It matters not that no fraud was meditated, and no injury done. The rule is not intended to be remedial of actual wrong, but preventive of the possibility of it.

Further consideration of the principle or rule of public policy, invoked by defendant, is unnecessary. Its existence was not questioned by the learned judge of the Common Pleas. On the contrary, he was disposed to recognize the force of the decisions that were cited in support of it, but came to the conclusion that they did not apply to the case in hand, because, as he says, the evidence shows that all the parties were members of the same company; that DeWitt and Cake knew that Dr. Rice was claiming commissions from Davis, and the latter knew that Rice was to have four shares of the stock; that knowledge of these facts by all the parties, without complaint or dissent at the time, and without any evidence of bad faith in the transaction, is sufficient to take the case out of that class of cases in which it has been held that an agent is not to be allowed compensation from both the parties to a sale. It is not by any means clear that all the facts, thus assumed by the court, were either proved or admitted, or that the jury would have been warranted in finding them to be true; but, assuming, for the sake of argument, that they were conclusively established, they are at best only evidence that the parties assented to the arrangement, and agreed to waive the rule of public policy now insisted on by the defendant.

Conceding, for the sake of argument, that it would be competent for persons, circumstanced as the parties in this case were, to waive or suspend, by mutual agreement, the operation of a rule of public policy, it cannot be successfully contended that such agreement may be inferred either from knowledge of the fact that such rule has been violated, or from silence or failure to dissent at the time, or from all these combined. Nothing short of clear and satisfactory proof of an express agreement to do so should be regarded as sufficient for that purpose. In the case at bar, there appears to be no evidence that would warrant either court or jury in saying that the rule

now insisted on by the defendant was waived by him.    He had a right to be silent, even if he knew that the plaintiff had undertaken to serve two masters, and intended to claim compensation from both.    His own testimony explains why no objections were interposed.

For reasons above suggested, we are of opinion that the learned judge erred, not only in his answer affirming plaintiff's first point, but also in refusing to affirm defendant's second point for charge.    Rules of law, such as that under consideration, intended to be preventive of the possibility of wrong, rather than remedial of actual wrong, should be rigidly enforced, unless it clearly appears that the parties, for whose protection they were intended, have, with full knowledge of all the circumstances, agreed to waive their rights thereunder.

Judgment reversed.