THOMAS J. QUINN *vs.* SMITH P. BURTON, JR.

Suffolk.   November 21, 1906. — May 14, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Agency.   Broker.   Contract,* Performance and breach.

In an action by a real estate broker for a commission for his services in procuring
an exchange of real estate, if it appears that the plaintiff, representing the
defendant as the owner of certain real estate, and two other brokers, represent-
ing the owner of other real estate, arranged for an exchange of the properties,
and as a part of the arrangement made an agreement among themselves, with-
out the knowledge of their respective principals, that the commissions received
on both sides should be put into a common fund and divided equally among
the three brokers, the plaintiff cannot recover, as there was a breach of his
contract to render faithful service to the defendant which prevents him from
earning a commission.

CONTRACT by a real estate broker for a commission for his
services in procuring an exchange of real estate.   Writ dated
January 6, 1903.

At the first trial of this case in the Superior Court before
*Wait,* J. the jury returned a verdict for the plaintiff in the sum
of $1,609, and the defendant alleged exceptions which were
sustained by this court in a decision reported in 188 Mass.
466.

At the new trial of the case before *Schofield,* J. the plaintiff
testified that on or about June 15, 1902, the defendant placed
in his hands for sale or exchange his farm in the town of
Reading and that the plaintiff, after presenting to the defendant
a number of propositions for exchange, presented one for the
exchange of the farm for the equity in two dwelling-houses on
Commonwealth Avenue in Boston owned by one Shapleigh.

There was evidence tending to show that Shapleigh in the
first instance placed his houses in the hands of one Paige, a real
estate broker; that through Paige they came to one McDonald;
and that at the time the negotiations were being carried on
Paige and McDonald were acting as the agents for Shapleigh.

It was testified by the plaintiff, and also by Paige and
McDonald, that there was an agreement between the brokers,
on both sides, that the commissions to be received by the brokers

from each party, that is, the commission to be received by the plaintiff from the defendant, and by Paige and McDonald from Shapleigh, should be placed in one pool and divided equally between the three brokers, and that this agreement was without the knowledge or consent of the defendant or Shapleigh.

There was other evidence which has become immaterial. It was agreed at the trial that if the plaintiff was entitled to recover in this action, he was entitled to recover five per cent on $30,000, that is, $1,500.

The judge, among other instructions not objected to, instructed the jury as follows: " That in case there was an agreement, not disclosed to the principals, by which the two brokers acting for and representing Shapleigh on the one side, and Quinn, representing the defendant on the other side, were to put into a common fund or pool as it is called the commission which each was to receive from their respective principals and divide the same equally between the three, then in that case, Quinn, the plaintiff in this action, cannot recover." The plaintiff excepted to this instruction.

In answer to the special questions the jury made the following findings: " Was. there an agreement to divide commissions? " " Yes." — " If so, what was it ? " " To pool their commissions and divide."

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*J. H. Murphy*, for the plaintiff.

*S. H. Tyng*, for the defendant.

BRALEY, J. In the former decision of this case, it was held upon the evidence reported " that the jury were not warranted in finding that the customer told his broker that he would make the exchange," and the ultimate question, whether, if this had appeared, a commission had been earned, was left undecided. *Quinn* v. *Burton*, 188 Mass. 466, 469. At the second trial, while there was evidence from which the jury could find that the customer had consented to make an exchange, it was for the first time also disclosed that, without the knowledge of their respective principals, the brokers had agreed to put the commissions received by each into a common fund which was to be divided equally between them. The jury having been instructed

that if this agreement was proved the plaintiff could not recover, his exception to the correctness of this ruling presents the question to be decided.

It is a principle universally recognized, as founded not only on common business morality but on a sound public policy, that persons who act in a representative capacity, whether styled executors, administrators, trustees or agents, are not permitted in the performance of their duties to put themselves in a position antagonistic to the interests of those whom they represent. *Oberlin College* v. *Fowler*, 10 Allen, 545. *Hayes* v. *Hall*, 188 Mass. 510, 511, and cases cited. *Staats* v. *Bergen*, 2 C. E. Green, 554, 558. *Union Stock Yards Bank* v. *Gillespie*, 137 U. S. 411, 423. *Ex parte Lacy*, 6 Ves. 625. If, in fact, their principal suffers no harm, or may have been benefited, this inquiry is unimportant, as the object of the law is to secure fidelity in the discharge of fiduciary duties, uninfluenced by considerations which necessarily are corrupt in their tendencies. *Harrington* v. *Victoria Graving Dock Co.* 3 Q. B. D. 549. An agent who places himself in this situation creates the opportunity, and is exposed to the temptation, of taking advantage of his principal. In attempting to serve two masters, the presumption is that he will act for his own mercenary interest, and by assuming a double relation, he becomes disqualified to perform faithfully the services for which he was originally employed, and his conduct is fraudulent. *New York Central Ins. Co.* v. *National Protection Ins. Co.* 14 N. Y. 80, 91. *Reed* v. *Norris*, 2 Myl. & C. 361.

But, where at the inception of the contract his adverse position is known, or where afterwards, upon its being disclosed, his employment is continued, such consent waives the effect of the double character of the agency and permits him to recover for services. *Holcomb* v. *Weaver*, 136 Mass. 265. *Burr* v. *Beacon Trust Co.* 188 Mass. 131, 133.

There was evidence from which the jury could find that the plaintiff was given discretionary power as to the valuation which should be placed upon the defendant's property, and he is to be considered throughout as an agent rather than as a middleman to bring parties together where each desires to exchange his property for that of the other and they eventually make their

own contract. In such a transaction the broker, not being the agent of either but merely a medium by which they are put in communication, properly may receive a commission from both. *Rupp* v. *Sampson,* 16 Gray, 398. *Hooper* v. *California,* 155 U. S. 648. If the proposed customer, whom the plaintiff contends that he secured, had agreed to pay him a commission if an exchange could be accomplished, such an agreement, if undisclosed to the defendant, would have been in violation of the plaintiff's agency. *Walker* v. *Osgood,* 98 Mass. 348. *Holcomb* v. *Weaver, ubi supra.*

But the exact form of the transaction whereby an agent disqualifies himself is not of controlling importance, as the true test is whether directly or indirectly he has voluntarily assumed such inconsistent relations with other parties that he cannot longer impartially and honestly discharge his original duty.

The plaintiff contends that the case of *Alvord* v. *Cook,* 174 Mass. 120, is decisive in his favor. In that case, however, there was a special contract made at the time of employment by which the brokers were to receive as their compensation a fixed sum in money and certain specific property whose value had been determined, and consequently the price of their services was independent of any valuation which subsequently might be put upon the respective properties of their principals.

By the secret agreement in the present case a joint fund was to be created for the benefit of the agents of both parties, in which in common with his associates the plaintiff's undivided share would be enhanced according to the valuation which they finally might be able to establish as the basis of the trade, for the larger the valuation the greater would be the commissions. The paramount obligation of the plaintiff was to effect an exchange of the defendant's estate on the most advantageous terms he could obtain, based on the real not on the inflated value of the property to be taken in exchange. He could not bind himself indirectly to represent both parties, when employed to act for but one, by participating in a joint enterprise the amount of whose profits depended not only on the valuation of the estate of his principal but on that of the other party, and still be faithful to his original employment. *Thwing* v. *Clifford,* 136 Mass. 482. See also *McMurtie* v. *Guiler,* 183 Mass. 451, 453; *Berry* v.

*Pelneault*, 188 Mass. 413. The defendant was entitled throughout the negotiations to command the personal fidelity and sound judgment of his agent to whom he had entrusted the business, uninfluenced by such an arrangement. But, after the plaintiff had placed himself in a position where according to common experience he must be unduly affected by a regard for his individual advantage and that of his associates, he assumed adverse relations to his principal. It was, therefore, correctly ruled that, if found, such conduct constituted a breach of his contract, which prevented the earning of a commission. *Fuller* v. *Dame,* 18 Pick. 472, 481. *Farnsworth* v. *Hemmer,* 1 Allen, 494, 496. *Rice* v. *Wood,* 113 Mass. 133, 135. *Holcomb* v. *Weaver, ubi supra. Veasey* v. *Carson,* 177 Mass. 117, 120, 121.

*Exceptions overruled.*