## H. C. JENSEN v. M. K. BOWEN.

(164 N. W. 4.)

**Agent to sell land — for another — commissions — collecting from both parties — cannot without their consent — public policy — against.**

1. Where an agent is employed to sell land for another and to carry on negotiations in relation thereto, he cannot, without the consent of both parties, contract for or collect commissions from both parties. This rule is a rule of public policy.

---

NOTE.—The general rule is that a real estate broker employed to sell, purchase, or exchange property for a specified commission, who, in effecting the transaction, also received a commission from the other party, without disclosing that fact to his principal, is not entitled to recover commissions from his principal, especially where it is evident that reliance was placed upon his judgment and skill; but where a party employs him, with knowledge that he is also acting for the other party, he is entitled to his commissions from the first-named party, or he may recover commissions from both parties where he is employed merely to bring them together, they to make their own bargain, thus giving him no discretion or confronting him with a conflict of duties, but making him a mere middleman. The case of JENSEN v. BOWEN comes within the last exception, as will be seen by an examination of the cases in 45 L.R.A. 44, and 24 L.R.A.(N.S.) 659.

As to when real estate broker may recover compensation from both parties, see notes in 34 Am. St. Rep. 323, and 60 Am. Dec. 370.

Broker — employment — mere middleman — parties make their own bargains — compensation of — agreed upon — may recover from either or both — knowledge of parties — actual sale — intrusted with power — dual contract — must be with both.

2. A broker who is employed as a mere middleman to bring two parties together to make their own bargains may recover an agreed compensation from either or both, though neither may know that compensation is expected from the other. If, however, during the negotiations, he is intrusted with doing the actual bargaining, he must make his dual contract for commissions known to both parties.

Broker — to bring parties together — no other duty — taking part in closing deal — duties — price — fixing of.

3. A broker is simply a middleman within the meaning of the exception when he has no duty to perform but to bring the parties together, leaving them to negotiate and to come to an agreement themselves without any aid from him. If he takes, or contracts to take, any part in the negotiations, however, he cannot be regarded as a mere middleman, no matter how slight a part it may be. Nor does it make any difference that the price was fixed by his first employer.

Dual commissions — contract for — established by proof — burden of proof — middleman — inception of deal.

4. When a contract for double commissions is proved, the burden of proof is upon the broker to show that he was merely a middleman, and this not merely at the inception, but throughout the whole transaction.

Additional Syllabus. On Petition for a Rehearing.

Directed verdict — motion for — ruling on — counterclaim — appeal — reviewable on.

5. An erroneous ruling upon a motion for a directed verdict on a counterclaim is an error of law, and is reviewable on appeal from the judgment; and it is not necessary to such review that a motion for a new trial should have been made, or that on such motion or on appeal the particulars in which the evidence was insufficient to support such counterclaim should be specified.

Opinion filed July 9, 1917. Rehearing denied July 28, 1917.

Action for purchase price of grain. Counterclaim for commissions as real estate agent.

Appeal from the District Court of Golden Valley County, W. C. Crawford, J.

Judgment for defendant. Plaintiff appeals.

Reversed.

Statement of facts by Bruce, Ch. J.

This is an action to recover $800 alleged to be the purchase price of grain sold to the defendant, M. K. Bowen. The defendant admits the

purchase, but claims that the amount agreed to be paid was only $600. He then alleges, as a counterclaim, that on or about the 15th day of July plaintiff and defendant entered into an agreement whereby the plaintiff agreed to pay to the defendant the sum of $800 on condition that the defendant should bring the plaintiff and one B. S. Davis, who was the owner of certain lands, together, so that the plaintiff and the defendant might make a deal for the sale by the said Davis, and the purchase by the said plaintiff of said tract of land upon terms acceptable to the said Davis and the plaintiff; that the defendant did bring said Davis and said plaintiff together, and that the said parties then and there on or about the 5th day of September, A. D., 1912, made a deal whereby the said Davis sold and transferred said real estate to the said plaintiff; that the defendant has given plaintiff credit in the sum of $600 for the purchase of the grain upon said brokerage of $800, and that there is now due to him the sum of $200, being the difference between the two amounts.

A verdict was rendered for the defendant for the sum of $1, and from the judgment entered thereon the plaintiff appeals.

*Thomas H. Pugh* and *Otto Thress,* for appellant.

The rule is that a broker cannot receive commissions from both parties to a land transaction unless they both agree to same.    Langford. v. Issenhuth, 28 S. D. 451, 134 N. W. 889.

A middleman is defined to be a person who merely brings the parties together and takes no part in making the bargain or closing the same. 27 Cyc. 487; Geddes v. Van Rhee, 126 Minn. 517, 148 N. W. 549.

An agent who represents the adverse party without his principal's consent not only loses his right to compensation from his principal, but he cannot recover pay from the other party on either an express or implied promise to pay.    Anderson v. First Nat. Bank, 5 N. D. 80, 64 N. W. 114; Clendenning v. Hawk, 10 N. D. 90, 86 N. W. 114; Van Dusen v. Bigelow, 13 N. D. 277, 67 L.R.A. 288, 100 N. W. 723.

An agent cannot be at the same time a party and agent of the opposite party, unless the latter knows and assents to it.    Dull v. Royal Ins. Co. 159 Mich. 671, 124 N. W. 533.

His interest and his duty must not conflict.    Hogle v. Meyering,

161 Mich. 472, 126 N. W. 1063; State v. State Journal Co. 77 Neb. 752, 9 L.R.A.(N.S.) 179, 110 N. W. 763, 111 N. W. 118; Larson v. Thoma, 143 Iowa, 338, 121 N. W. 1059; Webb v. Paxton, 36 Minn. 532, 32 N. W. 749.

He must use his best judgment and skill to promote the interest of his employer. He must not act for two persons whose interests are adverse. Hunter Realty Co. v. Spencer (Horner v. Spencer), 21 Okla. 155, 95 Pac. 757, 17 L.R.A.(N.S.) 622, also extensive note to above case; Rinebarger v. Weesner, 91 Kan. 303, 137 Pac. 969.

He cannot recover compensation from either without showing consent of both to his dual employment. Crawford v. Surety Invest. Co. 91 Kan. 748, 139 Pac. 481; Jeffries v. Robbins, 66 Kan. 427, 71 Pac. 852; Crawford v. Surety Invest. Co. 91 Kan. 748, 139 Pac. 481; Lynch v. Fallon, 11 R. I. 311, 23 Am. Rep. 458; Raisin v. Clark, 41 Md. 158, 20 Am. Rep. 66; Hoffhines v. Thorson, 92 Kan. 605, 141 Pac. 253; Young v. Hughes, 32 N. J. Eq. 372; Bookwalter v. Lansing, 23 Neb. 291, 36 N. W. 549; Hall v. Gambrill, 34 C. C. A. 190, 63 U. S. App. 740, 92 Fed. 32; McKinley v. Williams, 20 C. C. A. 312, 36 U. S. App. 749, 74 Fed. 94; Langford v. Issenhuth, 28 S. D. 451, 134 N. W. 889; Story, Agency, § 31; 19 Cyc. 207, 226; 31 Cyc. 1447; 1 Am. & Eng. Enc. Law, 2d ed. 1073; 4 Am. & Eng. Enc. Law, 2d ed. 984; 2 C. J. 763, and cases cited.

Motions for new trials are addressed to the sound discretion of the trial court. Aylmer v. Davis, 30 N. D. 514, 133 N. W. 419; First International Bank v. Davidson, 36 N. D. 1, 161 N. W. 281.

*C. L. Waldron, T. F. Murtha,* and *J. W. Sturgeon,* for respondent.

Dual agency, fraud, and all such matters must be specially pleaded and proved, if such defenses are claimed. No such issues were before the lower court, and they cannot be presented here for the first time. 1 Sutherland, Pl. § 516, note 207; Jain v. Griffin, 3 Colo. App. 90, 32 Pac. 80.

No motion was made for a directed verdict, and therefore a motion for judgment notwithstanding the verdict could not be entertained. Code, § 7643; Buchanan v. Occident Elevator Co. 33 N. D. 346, 157 N. W. 122.

Again, after such a motion is made and overruled, and the movant introduces evidence, he forfeits his rights in failing to renew his motion.

Landis Mach. Co. v. Konantz Saddlery Co. 17 N. D. 310, 116 N. W. 333; West v. Northern P. R. Co. 13 N. D. 231, 100 N. W. 254; Johns v. Ruff, 12 N. D. 79, 95 N. W. 440.

A motion based on the insufficiency of the evidence must point out wherein the evidence really is insufficient, or for what reasons it is so claimed. Code, § 7656; Updegraff v. Tucker, 24 N. D. 171, 139 N. W. 366; Gagnier v. Fargo, 12 N. D. 219, 96 N. W. 841; Flora v. Mathwig, 19 N. D. 4, 121 N. W. 63; Pickert v. Rugg, 1 N. D. 230, 46 N. W. 446; Anderson v. Medbery, 16 S. D. 329, 92 N. W. 1087; Buchanan v. Occident Elevator Co. 33 N. D. 347, 157 N. W. 122; Morris v. Minneapolis, St. P. & S. Ste. M. R. Co. 32 N. D. 366, 155 N. W. 861.

Where there is a conflict in the evidence, a motion for directed verdict is properly overruled. Pewonka v. Stewart, 13 N. D. 117, 99 N. W. 1080, 16 Am. Neg. Rep. 540; Severtson v. Northern P. R. Co. 32 N. D. 200, 155 N. W. 11; Dring v. St. Lawrence Twp. 23 S. D. 624, 122 N. W. 664; Edwards v. Chicago, M. & St. P. R. Co. 21 S. D. 504, 110 N. W. 832; Higgs v. Minneapolis, St. P. & S. Ste. M. R. Co. 16 N. D. 446, 15 L.R.A.(N.S) 1162, 114 N. W. 722, 15 Ann. Cas. 97; Houghton Implement Co. v. Vavrowski, 19 N. D. 594, 125 N. W. 1024; Grasinger v. Lucas, 24 S. D. 42, 123 N. W. 77.

In no event would plaintiff be entitled on this appeal to an order for judgment. Ætna Indemnity Co. v. Schroeder, 12 N. D. 110, 95 N. W. 436.

Defendant pleaded and proved that he was a mere middleman who simply brought plaintiff and the landowner together and allowed them to make their own deal. Upon such showing he is entitled to recover. Leathers v. Canfield, 45 L.R.A. 51, annotation; 19 Cyc. 234 (i); Clark v. Allen, 125 Cal. 276, 57 Pac. 985; Abel v. Disbrow, 15 App. Div. 536, 44 N. Y. Supp. 573; Geery v. Pollock, 16 App. Div. 321, 44 N. Y. Supp. 673; Litts v. Morse, 145 Wis. 472, 130 N. W. 460; King v. Reed, 24 Cal. App. 229, 141 Pac. 41; McLure v. Luke, 24 L.R.A.(N.S.) 659, 84 C. C. A. 1, 154 Fed. 647; Redmond Bros. v. Henke, 137 Iowa, 228, 114 N. W. 885; Wasser v. Western Land Securities Co. 97 Minn. 460, 107 N. W. 160; Darrow Invest. Co. v. Breyman, 32 Wash. 234, 73 Pac. 363; Langford v. Issenhuth, 28 S. D. 451, 134 N. W. 889.

Where the broker acts merely as a middleman it is wholly immaterial that either party is ignorant of the broker's employment by the other side. Montross v. Eddy, 94 Mich. 100, 34 Am. St. Rep. 323, 53 N. W. 916; Ranney v. Donovan, 78 Mich. 318, 44 N. W. 276; Leathers v. Canfield, 45 L.R.A. 51, annotation; 19 Cyc. 234; Green v. Southern States Lumber Co. 141 Ala. 680, 37 So. 670; Law v. Ware, 238 Ill. 360, 87 N. E. 308; Grasinger v. Lucas, 24 S. D. 42, 123 N. W. 77; Kilpinski v. Bishop, 143 Wis. 390, 127 N. W. 974; Tasse v. Kindt, 145 Wis. 115, 31 L.R.A.(N.S.) 1222, 128 N. W. 972; Friar v. Smith, 120 Mich. 411, 46 L.R.A. 633, 79 N. W. 633.

Defendant did not contract with either party for his skill, knowledge, and influence, and he stands entirely indifferent between them. Mechem, Agency, § 973; Ranney v. Donovan, 78 Mich. 318, 44 N. W. 276; Montross v. Eddy, 94 Mich. 100, 34 Am. St. Rep. 323, 53 N. W. 916; Rupp v. Sampson, 16 Gray, 398, 77 Am. Dec. 416; Orton v. Scofield, 61 Wis. 382, 21 N. W. 261.

There is no newly discovered, legal evidence. There is no showing of any such thing. There is only evidence of certain conversations which are only and really the legitimate aftermath of a lawsuit. Braithwaite v. Aiken, 2 N. D. 57, 49 N. W. 419; 29 Cyc. 881 (1); Wilson v. Seaman, 15 S. D. 103, 87 N. W. 577; Longley v. Daly, 1 S. D. 257, 46 N. W. 247; Fisk v. Fehrs, 32 N. D. 119, 155 N. W. 676; 29 Cyc. 911; State v. Raice, 24 S. D. 111, 123 N. W. 708; Ernster v. Christianson, 24 S. D. 103, 123 N. W. 711; State v. Brandner, 21 N. D. 310, 130 N. W. 941; 29 Cyc. 918; Libby v. Barry, 15 N. D. 286, 107 N. W. 972; State v. Albertson, 20 N. D. 512, 128 N. W. 1122.

BRUCE, Ch. J. (after stating the facts as above). It is urged that the defendant, Bowen, was acting for Davis in the sale of the land; that Davis had promised him a commission for selling the same, and that since the proof shows that the plaintiff, Jensen, had also agreed to pay him a commission, and this fact was not known to Davis, no recovery can be had.

There can be no doubt of the correctness of this contention, provided that the proof does not also show that the defendant was merely a broker or middleman. The rule is one of public policy. "The rule is intended to be not only remedial of actual wrong, but preventive

of the possibility of it. . . . There can be no recovery from the party kept in ignorance, for as against him the broker has been guilty of a breach of faith and contract; inasmuch as it is a physical impossibility for him to render to more than one side, at one and the same time, his entire skill, judgment, and discretion as is bargained for by each employer in the absence of an express stipulation to the contrary. Nor can there be any recovery from the party who alone consented to the broker's acting in behalf of both, for he and the broker are equally guilty of the wrong committed against the other employer, and the law will not enforce an executory contract entered into in fraud of the rights of the latter." 4 R. C. L. 329; Rice v. Davis, 136 Pa. 439, 20 Am. St. Rep. 931, 20 Atl. 513; Scribner v. Collar, 40 Mich. 375, 29 Am. Rep. 541; Bell v. McConnell, 37 Ohio St. 396, 41 Am. Rep. 528.

There is, however, an exception to this rule, and that is that "a broker employed as a mere middleman, or, in other words, one engaged not to negotiate a sale or purchase, but simply to bring two parties together and permit them to make their own bargain, may recover an agreed compensation from either or both, though neither may know that compensation is expected from the other." Montross v. Eddy, 94 Mich. 100, 34 Am. St. Rep. 323, 53 N. W. 916; Leathers v. Canfield, 45 L.R.A. 33 and note, (117 Mich. 277, 75 N. W. 612); 4 R. C. L. 330.

"A broker is simply a middleman, within the meaning of this exception, when he has no duty to perform but to bring the parties together, leaving them to negotiate and [to] come to an agreement themselves without any aid from him. If he takes, or contracts to take, any part in the negotiations, however, he cannot be regarded as a mere middleman, no matter how slight a part it may be." 4 R. C. L. 330; Montross v. Eddy, supra; Barry v. Schmidt, 57 Wis. 172, 46 Am. Rep. 35, 15 N. W. 24; Scribner v. Collar, 40 Mich. 375, 29 Am. Rep. 541; Leathers v. Canfield, supra.

In the case at bar there seems to be no proof that the defendant, Bowen, was actually employed to take any part in the negotiations. The question is, Did he take such a part? If he did, under the authorities cited, he can recover no commissions, for the question is one of public policy as well as of implied contract. Anderson v. First

Nat. Bank, 5 N. D. 80, 64 N. W. 114; Clendenning v. Hawk, 10 N. D. 90, 86 N. W. 114.

Nor does it make any difference that the price was fixed by his first employer. See Webb v. Paxton, 36 Minn. 532, 32 N. W. 749. Unless, indeed, he was a mere middleman, each party who employed him was entitled to the exercise of his discretion, skill, and judgment; and the mere fact that the price was fixed by one would not absolve him from the use of such skill and discretion in regard to the interest of the other. But was he employed to act and to negotiate, or did he negotiate, for both parties? The question being one of burden of proof, when the double agency was shown, did he overcome the presumption of bad faith occasioned thereby by proof that he was merely a middleman, and this not merely at the inception, but throughout the whole transaction? We believe he did not, and we believe that it was incumbent upon him to do so.

The defendant testifies that he was employed by Mr. Davis to sell the land under the following letter of employment:

"I want to sell as I bought more here lately. I am going to advertise mine for sale. Will sell it cheap too, as I want to get rid of it and get the money in here if possible. If you know anyone who has $10,000 in cash and will assume $900 due Fisher on Oscar's 160, I will make it an object to you. Will throw in my share of the crop on the place besides."

He also testifies that he showed this letter to the plaintiff, Jensen, and that Jensen "told me that if I would get him and Mr. Davis together that he would give me a dollar an acre."

He then testifies:

I got Mr. Jensen and Davis together and Jensen bought the land. The deal was closed up about the 1st of September, 1912.

Q. Now, Mr. Bowen, you were employed by Mr. Davis to sell this land for him, were you not?

A. Well, I don't think I was really employed by him. I don't know whether you would call it employed or not; it might be.

Q. This letter was dated July 12, 1912? Mr. Bowen, you say that shortly after that, along about the 1st of August, you saw Mr. Jensen and asked him if he wanted to buy this property?

A. I think it was around that time. It was sometime after I got this letter. I showed him that letter and told him what I could sell it to him for. He told me that if I would get him and Mr. Davis together that he would give me a dollar an acre.

Q. What else did he say?

A. Well, he didn't want to come through on the proposition that Mr. Davis submitted there, and he told me his proposition.

Q. Now, Mr. Bowen, I will ask you whether or not Mr. Davis ever paid you any commission for making this sale?

A. Yes, sir, he did. I owed Mr. Davis a note of $260. He gave me that note back and gave me $210.

Q. Now, Mr. Bowen, did you ever inform Mr. Davis that you had been employed by Mr. Jensen to buy this land from him?

A. I don't know whether Bruce ever knew it. I never told him. He knew the whole deal at the time he paid me the commission. He knew this along in December, 1912.

Q. And that is when he learned it?

A. I think that he knew about it before. He learned of it along in December.

Q. That is when he became aware of that fact, when you signed this receipt just shortly before this?

A. He knew what our agreement was, and what we had settled on according to his letter on the 5th day of September.

Q. You never told him that you were acting as agent of Mr. Jensen in purchasing this land?

A. I think I told him the day we settled up, the day we bought the crop. He couldn't help but know it, because Jensen was the man that was getting the land.

Q. You never told him that you were acting as agent of Mr. Jensen in purchasing this land?

A. No, I don't think I ever told him.

Q. Now, Mr. Bowen, I will ask you whether or not you sold this land to Mr. Jensen in accordance with Mr. Davis' letter to you?

A. No, sir, I didn't. I didn't sell it to him that way.

Q. You made this sale did you not, Mr. Bowen?

A. Well, the deal went through.

Q. Through you?

A. The deal went through.

Q. Didn't it come through you, Mr. Bowen?

A. I never owned the land.

Q. Through your efforts?

A. Well, I guess so.

Q. Did you ever communicate with Mr. Davis after you had received this letter from him telling you that he wanted to sell this land, and he would pay you for it if you sold it?

A. Yes, sir, I did.

Q. What did you write him?

A. I stated Mr. Johnson's terms. I didn't tell him at that time that Mr. Jensen was buying this land.

Q. Do you know whether Mr. Davis accepted this or made the sale in accordance with the terms of your letters to him?

A. Well, the deal finally went through on Mr. Jensen's terms.

Q. On the terms that he first offered you?

A. Not the first offer, no.

Q. Well, the second offer?

A. Well, he finally made up his mind what he would do.

Q. You never made Mr. Davis but one offer on this land, did you, Mr. Bowen, as agent for him that you had received from Mr. Jensen?

A. I think there were two propositions submitted to Mr. Davis.

Q. Both by Mr. Jensen?

A. Through me.

Q. Through you?

A. Yes, sir. The land was not sold on the first offer made by Mr. Davis or on the first offer made by Jensen, but they finally got together. I didn't draw up any contracts or sign any.

Q. Now, wasn't it through your efforts that you put out that Mr. Davis paid you for your efforts in selling this land to Jensen?

A. Why, he did as he agreed in the letter he wrote me. He paid me what he agreed to pay in the letter.

Mr. Davis testifies as follows:

Q. I will ask you whether or not you ever employed Mr. Bowen to sell this land for you?

A. Well, in writing him about other things I don't remember the exact words I used, but I told him that if he found a buyer for the

land at the stated price that I would make it right with him, or words to that effect anyway.

Q. Did Mr. Bowen ever find a buyer for you?

A. Yes, he did. I sold the land. He found Mr. Jensen. I think I first heard from Mr. Bowen in regard to the sale of this land in August or during the summer. In reply I think to a letter I had written him about other matters, he put up this proposition. I did not know who the party was or anything at the time, but this is the farm deal that went through later on. He didn't tell me that he was selling the land to Mr. Jensen.

Q. State whether or not, Mr. Davis, he told you that he had been hired by Mr. Jensen to buy this land from you?

A. No, there was nothing mentioned about any man at all any further than putting up the deal to him, no names mentioned at all.

Q. Now, at the time of this sale, Mr. Davis, did you have any knowledge that Mr. Jensen had employed Mr. Bowen to buy this land from you?

A. No.

Q. What did you pay him for selling this land?

A. A commission of $475.

Q. Now, I will ask you, Mr. Davis, whether or not the land was sold when you sold it exactly in conformity with the terms of Mr. Bowen's offer to you?

A. Yes, I think it was.

Q. Exactly?

A. Yes. When I wrote to Mr. Bowen to put it up to him it was to be a cash proposition. When he came to me with this deal it went through as he had written to me. It went through exactly as he had written to me. There was only this one offer made on his part. He didn't tell me that Jensen was buying it.

Q. And you didn't know until you closed the deal?

A. The first I knew about it was the telegram I received who to make warranty deed to.

Q. You didn't care, Mr. Davis, who you sold the land to as long as you got a customer who was willing to pay your price?

A. Why, no, not if I got the terms and everything was satisfactory.

Tho deal must have been satisfactory to me.   I made it.   I knew who was getting the land before I made the deed.

Q. Before you transferred the property?

A. Yes.

Q. Did you come down here yourself?

A. Yes, I was here for three or four days.

Q. To close up the deal with Mr. Jensen?

A. Well, in a way practically so, yes, but it was some time after that before it was finished on account of the abstract.

Q. Well, everything was closed when you were here except the transfer of the papers?

A. Yes.

Q. And, while the deal was not the same as written on the back of "exhibit A," you were willing to pay Mr. Bowen the $475?

A. I did and got a receipt from him.   I paid that after the deal was closed up and after I knew who the buyer was; I think so.

Mr. Murtha: The defendant offers to show by this witness that he relied upon his own judgment in making the deal, and not upon the judgment or advice of the defendant.

Mr. Jones: Object to the offer as incompetent, irrelevant, and immaterial.

The Court: Objection sustained.

Q. Wasn't there more than one proposition submitted to you?

A. Not to my memory, no.

Q. How long did the negotiations run along after they started in August?

A. Well, I don't know.   It must have been February before the abstract was satisfactorily fixed.

Q. But I mean before you had everything all except the title papers?

A. I don't know, I came down here somewhere around the 1st of September and talked the matter over with Mr. Jensen.

Q. And you came to an agreement, settlement?

A. Well, I had practically agreed to that before I ever left home.

Q. You left the deed in one of the local banks here for delivery?

A. I don't remember.

Q. You didn't leave it with Bowen, Bowen didn't collect any of the money for you?

Mr. Jones: Object to that as incompetent, irrelevant, and immaterial.

The Court: Objection sustained.

Q. You never wrote to Bowen any other letter about employing him except the one that is in evidence here?

A. That's all, but I had written other letters to him. There was nothing more, I think, that I wrote about the terms of the employment save this.

Q. Has he ever written you anything about this deal other than you have testified to?

A. Well, yes, he wrote me in regard to the commission, he wanted to know what I was going to do about it. That is practically about all there was in the letter. Bowen never told me that Jensen was paying him anything.

H. C. Jensen, on being recalled, testified:

I never employed Mr. Bowen to buy this land from Mr. Davis. I never agreed to pay him anything if I was able to buy the land from Mr. Davis. I never hired him to get us together as he stated. I bought this land through Mr. Bowen.

Q. Of Mr. Davis?

A. Yes, that is who I got the deed from. He represented himself to be Mr. Davis' agent.

This testimony, to our minds, does not show the position of a middleman, and it·was incumbent upon the defendant to prove that fact.

The judgment of the District Court is reversed and a new trial is ordered.

ROBINSON, J. (concurring). The plaintiff sues to recover $800 and interest for an undivided half interest in certain crops sold and delivered to the defendant in the year 1912. The answer is that defendant purchased the crop at the agreed price of $600, and that in August, 1912, the plaintiff agreed to pay defendant $800 for procuring the sale to him of certain lands, and he has not paid it. The jury found a verdict of $1,000 for defendant, and the plaintiff appeals from the judgment and from an order denying a new trial. The plaintiff moved for a directed verdict, claiming that there was no proof to sustain the counterclaim, or a payment of $600, which defendant admitted that

he agreed to pay for the crop. As an agreement to pay $600 was conceded, and the excess of $200 disputed, the motion for a directed verdict must have been for $600 and interest.

It fairly appears from convincing evidence that, in bargaining for the sale of land, the defendant acted for both the seller and the buyer so as to obtain a commission from both of them, and that neither one knew that he was taking a commission from the other. For that reason there is no proof to sustain the counterclaim, while defendant contends that plaintiff knew that he was a mere go-between and that each party knew he was to receive a commission from the other. It is certain defendant was first retained by B. S. Davis, the owner of the land, and from Davis he received a commission of $475, as appears from the receipt of defendant, and, of course, that was ample pay for his services. After accepting the offer of Davis to aid him in selling the land, the defendant went to the plaintiff and bargained with him for a commission of $1 an acre in case of sale to him. His claim is that Davis knew he was acting for the owner of the land, but, if the plaintiff knew that and then offered a commission, it was a bribe unless it was known and assented to by the owner of the land, and the proof is that Davis did not know it. The defendant was sworn as a witness, and in answer to the question that he never told Davis, the answer was, "No, sir;" and Davis himself testified that at the time of the sale he had no knowledge that Jensen had employed Bowen to buy the land.

Bowen wrote Davis and offered to purchase the land, not naming the purchaser, and the offer was accepted. The deal went through exactly as Bowen wrote it, and Bowen did not name the purchaser to Davis. As Davis testifies, the first he knew of the purchaser was by a telegram to make a warranty deed to H. C. Jensen. It is an old trick of real estate men to act for both the seller and buyer, and to keep the one in ignorance of the other; and it is a fraud on both parties. It is not credible that either party would have consented to pay such a commission if he had known that the other party was paying a commission. Jensen testified he did not employ Bowen to buy the land, and did not agree to pay him a commission; that he never hired Bowen to bring him in contact with Davis, and also that Bowen represented himself to be the agent of Davis; but all that is contra-

dicted and it is needless to consider it.    The uncontradicted testimony of Bowen himself and of Davis shows that both parties did not know of the double dealing.    And, hence, the defendant had no right to contract for a commission from the plaintiff, as the defendant himself testifies that he agreed to pay for a crop of $600, and has not paid it except by the alleged commission service.    The judgment should be reversed and judgment entered in favor of the plaintiff and against the defendant for the sum of $600, with interest from December 1, 1912, and the costs.

## On Petition for a Rehearing.

BRUCE, Ch. J.    A petition for a rehearing has been filed, in which it is urged that the opinion in chief reversed the judgment of the trial court on the alleged insufficiency of the evidence to sustain the verdict, and that this question was not before the supreme court, and should not have been considered.    It is claimed that no motion below was made for a directed verdict, and that the motion for a new trial made in the court below was accompanied by certain specifications of error, and that said specifications nowhere specified wherein the evidence was insufficient, as required by § 7656 of the Compiled Laws of 1913, and the cases of Morris v. Minneapolis, St. P. & S. Ste. M. R. Co. 32 N. D. 366, 155 N. W. 861; Buchanan v. Occident Elevator Co. 33 N. D. 346, 157 N. W. 122; Updegraff v. Tucker, 24 N. D. 171, 139 N. W. 366; Gagnier v. Fargo, 12 N. D. 219, 96 N. W. 841, and 11 N. D. 73, 95 Am. St. Rep. 705, 88 N. W. 1030, 11 Am. Neg. Rep. 336; and Flora v. Mathwig, 19 N. D. 4, 121 N. W. 63.

There is no merit, however, in these objections.    The specifications of error which were made at the time of the motion for the new trial contained a specification to the effect that "the court erred in overruling plaintiff's motion for a directed verdict on the defendant's counterclaim, made at the close of defendant's case as follows:

"Comes now the plaintiff and moves the court for a directed verdict on the counterclaim, on the ground and for the reason that the admissions of the defendant, Bowen, conclusively show that he was an agent employed by Mr. Davis, and that by virtue thereof he was never employed by Mr. Jensen, and, if he was, a contract of that kind would

be void and against public policy and fraudulent, and that he can recover nothing on it."

The specifications also allege the error of the court:

"In denying plaintiff's motion for a directed verdict on defendant's counterclaim in his favor, made at the close of the entire case as follows:

"Mr. Jones: 'At this time, your Honor, we renew the motion heretofore made at the close of the defendant's case in full force and effect.' "

These specifications and these motions were all that was necessary. The errors assigned were errors committed in denying the motions for a directed verdict, not on the whole case, but on the counterclaim, and in such a case the counterclaim must be treated as a separate action. It may be that the defendant might have been entitled to have the issues, raised by plaintiff's complaint, submitted to the jury, but under the evidence in the case he was not entitled to have the issues raised by his counterclaim so submitted.

Under the holding in the case of Morris v. Minneapolis, St. P. & S. Ste. M. R. Co. 32 N. D. 366, 155 N. W. 861, where a motion for a directed verdict is made on the ground of the failure of the evidence to support a pleading, a motion for a new trial is not necessary to obtain a review in the supreme court. An erroneous ruling upon a motion for a directed verdict, indeed, is an error of law and is reviewable on an appeal from the judgment.

The petition for a rehearing is denied.