[File No. 6041.]

FRED MEES, Respondent, v. MATT. GREWER, Appellant.

(245 N. W. 813.)

Opinion filed August 23, 1932. Rehearing denied December 24, 1932.

*Kelsch & Higgins,* for appellant.

*Jacobsen & Murray,* for respondent.

ENGLERT, Dist. J. This action is brought in equity for an accounting. The plaintiff claims to recover $4,552:34, and a half interest in a half section of land, as his share of commissions in the sale of farm machinery. He alleges that those commissions were earned by him under an agreement with the defendant for the years 1923 and 1924. During those years, the plaintiff was in the employ of the Minneapolis Threshing Machine Company, as block salesman, with headquarters at Mandan, North Dakota. His territory covered all that part of the state west of the Missouri River, and east of the river "down on two branches, out of Bismarck, south." He was being paid by the said

company the sum of $150.00 per month, and all expenses while away from headquarters, for the year 1923; and the sum of $175.00 per month for the year 1924, and all expenses while away from headquarters. He was employed to devote his entire time, talents and energy to the service of the said company, to make sales, write contracts, help local dealers, make collections for said company, and to generally represent it in furtherance of its said business.

During the same years, 1923 and 1924, the defendant, Matthias Grewer, was the distributing agent of the said Minneapolis Threshing Machine Company, at Mandan, North Dakota, for the purpose of handling and distributing its machinery in the Mandan vicinity and territory allotted to him for that purpose. His territory was much smaller than that required to be covered by the plaintiff. Under this distributing contract, the said company agreed to pay the defendant a commission of 25% of the list price of machinery sold by him, and in case of cash sales, after deducting the 25%, he was being paid an additional 10% on the remainder.

The agreement between the plaintiff and the defendant covering the commissions here sought to be recovered, can be best described by quoting from the plaintiff's own testimony. "Mr. Grewer said, I have this distributor's contract which is more favorable than the regular contract, and you are the blockman on the territory, you write the contracts on the territory. He says, I know you are hard up and you need some additional money. I'll give you a chance to make some money for both you and myself. If you will get out here and write subdealers who will deal through me, then all the commission that is my share of the subdealers I will split with you 50-50. With the understanding, of course, that sales I make directly adjacent to Mandan or his own territory direct I wasn't to have any commissions on those deals."

Under that agreement, the subdealers were to receive 50% of the total commission, and the remaining 50% was to be divided equally between the plaintiff and the defendant. The plaintiff was to have a commission not only on sales made by him, but on whatever sales or deals were made in the subdealers' territory. In keeping with that agreement, the plaintiff proceeded to place subdealers, make sales, take second-hand machinery in trade, accept payment and make collections. for and on behalf of the defendant.

The nature and character of the deals made, on which commissions are claimed, can be clearly explained by citing one example from the plaintiff's testimony. "Q. Now, coming back where I asked you a minute ago, tell us now the deals you negotiated for Grewer thru the dealers under this contract. Give us the names and, if you can, the amount of the total commission derived from such sales which went to you and Grewer for each deal. A. John Kahovec, New Salem. Q. Just briefly what you sold. A. 17-30 tractor and a separator, 24-42 separator with attachments, complete outfit. Q. Did Kahovec pay the purchase price of that machinery? A. He did. Q. Now, what was the total commission which Grewer received on that deal? A. The total commission is based on the resale of a steam rig that we took in trade from Kahovec and resold to John Stass and another party at Blue Grass. Q. What was the total commission? A. $1,177.80. Q. Was that commission for the dealer and you fellows combined? A. That was the total commission. Q. Your share of that and Grewer's combined? A. Mr. Blank received $588.90, and Mr. Grewer received $588.90. Q. So then your commission on that deal would be half of the $588.90? A. Yes, sir."

At the conclusion of the trial in the court below, the defendant moved for a dismissal of the case because the agreement was in breach of duty, against good morals, contrary to statute, and a violation of public policy. The motion was denied, and judgment was entered in favor of the plaintiff. From this judgment, the defendant appealed to this court.

The sole question for determination is whether the plaintiff can enforce the contract, and recover for his share of the commissions. In approaching that subject, we are mindful of the rule that a contract should not be declared to be in contravention of public policy unless it is apparent that it violates some statute, is against good morals, or that its tendency is to interfere with the public welfare or safety. No exact definition of public policy has ever been given. The one most generally quoted and accepted is that principle of the law which holds that no person can lawfully do that which has a tendency to be injurious to the public or is against the public good, which may be termed the "policy of the law," or "public policy in relation to the administration of the law."

Our statute, § 5922, Comp. Laws 1913, makes contracts unlawful that are: "1. Contrary to an express provision of law. 2. Contrary to the policy of express law, though not expressly prohibited; or, 3. Otherwise contrary to good morals." The relation of an agent to his principal is ordinarily that of a fiduciary. The courts hold those acting in such fiduciary capacity to the strictest fairness and integrity. Morris v. Bradley, 20 N. D. 646, 128 N. W. 118; Jensen v. Bowen, 37 N. D. 352, 164 N. W. 4.

In Stephens v. Gall (D. C.) 179 Fed. 938, the court held that "all acts of an agent which tend to violate his fiduciary duty are regarded as frauds upon the confidence bestowed, and are not only invalid as to the principal, but are also against public policy."

But the plaintiff contends that the contract in question does not contravene any principle of good morals. We cannot agree with this contention. As said in Ferguson v. Gooch, 94 Va. 1, 26 S. E. 397, 40 L.R.A. 234: "To be secretly in the service of one party, while ostensibly acting solely for the opposite party, is a fraud upon the latter, and a breach of public morals which the law will not permit."

It is a well established rule that one acting in a fiduciary capacity is required to exercise perfect fidelity to his trust, and the law, to prevent the abuse of such fidelity, and to guard against any temptation to serve his own interest, to the prejudice of his principal's, will not lend itself to enforce any agreement in violation thereof. That the plaintiff by this agreement intended to obtain some advantage to himself cannot be seriously questioned. But such agreements, to be contrary to good morals, and against public policy, do not necessarily depend upon whether the fiduciary intended to gain an advantage to himself. If it affords the agent an opportunity, and subjects him to the temptation, to obtain such advantage, it offends against good morals. It is no answer against a wrong to say that the principal did not suffer as a result of the agreement. He may even have profited thereby. The test is the evil tendency of the contract, not its actual result. If the transaction is inconsistent with fair and honorable dealing, and contrary to sound policy, it contravenes good morals.

As said in Hoge v. George, 27 Wyo. 423, 200 Pac. 96, 18 A.L.R. 469: "A contract is illegal if its object or tendency is to cause unfaithful conduct by a fiduciary."

In Smith v. David B. Crockett Co. 85 Conn. 282, 82 Atl. 568, 39 L.R.A.(N.S.) 1148, the court said: "Contracts which are opposed to open, upright, and fair dealing are opposed to public policy. A contract by which one is placed under a direct inducement to violate the confidence reposed in him by another is of this character."

In Atlee v. Fink, 75 Mo. 100, 42 Am. Rep. 385, the court said: "One employed by another to transact business for him has no right to enter into a contract with a third person, which would place it in his power to wrong his principal in the transaction of the business of the latter, and which would tempt a bad man to act in bad faith toward his employer." The court further said: "His compensation could be increased by such conduct, and it is no answer, that nothing of the kind occurred."

That is exactly the situation here. The plaintiff, by the agreement on which he claims to recover here, increased his compensation to a very considerable extent.

In Harrington v. Victorial Graving Dock Co. L. R. 3 Q. B. Div. 549, the action was brought to recover a commission. The plaintiff was acting as superintendent for his employer, and the defendant agreed to pay the plaintiff a 5% commission on the work that the defendant was doing for the plaintiff's employer. Chief Justice Cockburn said: "I will assume for the purpose of argument, that the agreement did not influence the mind of the plaintiff so as to induce him to do anything dishonest towards his employers. . . . The tendency of such an agreement must be to bias the mind of the agent or other person employed, and to lead him to act dishonestly to his principal. It is intended by the party that promises the bribe to have that effect, and the other party knows such is his intention. Such a bargain is obviously corrupt. It would plainly be in contravention of the maxim, E turpi causa non oritur actio, and most mischievious to hold that such a man could come into a court of law to enforce such a bargain on the ground that he was not in fact corrupted. It is quite immaterial that the employer was not in fact damaged."

Here, the defendant agreed to pay the plaintiff a commission for all sales that he would make, or help to make for the defendant in defendant's territory, so they could both share the profit of the defendant's agency contract. Was not that a strong inducement to the plaintiff to

neglect sales in the territory of his employer, other than that in which he was receiving this additional compensation? Did not the contract with the defendant give the plaintiff an interest to act contrary to his duty to his employer? While as many, or maybe more, sales were made for and on behalf of the said company, the plaintiff was serving his own interest and advantage. He was making a secret profit under his contract with the defendant, which was unknown to his employer. Such conduct amounted to a breach of faith under the contract with his employer, and violated his duty and obligation to it.

As said in Rezos v. Zahm & N. Co. 78 Cal. App. 728, 246 Pac. 564: "One who is entrusted with the interests of others cannot be allowed to make the business an object of interest to himself. Such transactions are against the policy of the law."

The agreement between the plaintiff and defendant not only enabled the plaintiff to make a secret profit for himself, but he placed himself in a position antagonistic to the interests of his employer. Under his contract with the company, he was in duty bound to canvass the territory allotted to the defendant, make sales therein, and handle second-hand machinery. Under the arrangement with the defendant he made sales, looked after defendant's collections, took in second-hand machinery for him, and secured additional commissions for reselling the same. Would it not be to the plaintiff's interest to neglect sales, and reselling second-hand machinery taken in by his employer? He was being paid a monthly salary, and all expenses, for his work under the contract with the company. He had no right to accept additional compensation or commissions from others for the performance of the work he was employed by the company to do. By doing so, he committed not only a breach of trust, but a fraud upon his principal. Such an arrangement, for a consideration, is but another form of bribe, and might well lead to a neglect of his other territory. He testified: Q. "Now, who was the one who negotiated and worked up these different deals and found the buyer? A. I did myself. Q. You went out with the dealer and found the buyer? A. Yes, sir."

The plaintiff was, in reality, serving two masters. The defendant had a contract with the Minneapolis Threshing Machine Company, "more favorable than the regular contract." It was this contract of which the plaintiff was taking advantage. By that contract, the plain-

tiff was given "a chance to make some money for both" himself and the defendant. The plaintiff agreed with the defendant to "write sub-dealers who will deal through me (defendant)." As it is written: "No man can serve two masters."

In Chapman v. Currie, 51 Mo. App. 40, 43, the court said: "It makes no difference that such common agent was guilty of no actual wrong, as the court refuses to countenance such an employment, not for the sake of the principal, but for the sake of the law. It is immaterial whether the principal was in fact injured or not, or whether the agent intended any wrong." This statement is quoted with approval by the Supreme Court of South Dakota in Lemon v. Little, 21 S. D. 628, 114 N. W. 1001.

The court, in Humphrey v. Eddy Transp. Co., 107 Mich. 163, 65 N. W. 13, said: "It is immaterial that the plaintiff acted in good faith, or that the defendant suffered no damage. It is the policy of the law to remove all temptation in an agent to be influenced by his own interest to the detriment of his principal."

"And generally, no agent, in the course of his agency—in the matter of his agency—can be allowed to make any profit without the knowledge and consent of his principal," said the court in Leathers v. Canfield, 117 Mich. 277, 75 N. W. 612, 45 L.R.A. 33.

In Quinn v. Burton, 195 Mass. 277, 81 N. E. 257, the court said: "If, in fact, their principal suffers no harm or may have been benefited this inquiry is unimportant, as the object of the law is, to secure fidelity in discharge of fiduciary duties, uninfluenced by considerations which necessarily are corrupt in their tendencies."

Whether advantage was taken, or not, by the agent, is not alone the deciding principle. It is the temptation to violate the trust and confidence bestowed upon the agent that the law condemns. To hold that such an agreement is not against good morals in business and a violation of public policy, would open wide the door to unfaithfulness, fraud and deception. As said in Smith v. David B. Crockett Co. 85 Conn. 282, 82 Atl. 569, 39 L.R.A.(N.S.) 1148, supra, "courts not only redress fraud, but seek to prevent it by removing the temptation."

The principle here announced is recognized by this court, in Jensen v. Bowen, 37 N. D. 352, 164 N. W. 4. It was there said: "In the case at bar there seems to be no proof that the defendant, Bowen, was

actually employed to take any part in the negotiations. The question is: did he take such a part? If he did, under the authorities cited, he can recover no commissions, for the question is one of public policy."

The plaintiff, however, insists that the agreement to pay these commissions amounts to no more than allowance and payment of a bonus to an agent by the employer, to increase its business. Though the Minneapolis Threshing Machine Company paid commissions, it was not a party to the agreement under which were earned the amounts claimed in this action.

In Smith v. David B. Crockett Co. 85 Conn. 282, 82 Atl. 569, 39 L.R.A.(N.S.) 1148, the principal agreed to pay its agent, in addition to his salary and expenses, a bonus of 25c a gallon on varnish, to be used to influence purchasing agents and secure their business. Because of that bonus provision, the court held that contract opposed to honesty in business, and contrary to public policy. The opinion in that case says: "An agreement to pay a bonus is not necessarily a corrupt and unlawful agreement. Generally a bonus is a sum given or paid beyond that which is legally required to be paid to the recipient. The words 'payment of a bonus' may also be used in the sense of payment of a bribe (Century Dictionary); of the payment of a sum to weaken or destroy the fidelity of a trusted agent."

There the bonus was paid by the principal to its agent, to influence purchasing agents to buy its products. Here, the defendant agreed to pay the plaintiff a bonus or commission to influence him to secure business for the defendant. In both instances, the principals profited by the acts of the agents. So that the argument of benefit is of no avail.

Nor is there any merit in the claim that because the contract was executed, though it were held to be illegal, the plaintiff is entitled to recover. An illegal contract is absolutely void both at law and in equity. It creates no obligation between the parties, and cannot form the basis of a judicial proceeding. Jensen v. Bowen, 37 N. D. 352, 164 N. W. 4; Levy v. Spencer, 18 Colo. 532, 53 Pac. 415, 36 Am. St. Rep. 303; Howard v. Murphy, 70 N. J. L. 141, 56 Atl. 143, 1 Ann. Cas. 571; Rice v. Davis, 136 Pa. 439, 20 Am. St. Rep. 931, 20 Atl. 513; Rice v. Wood, 113 Mass. 133, 18 Am. Rep. 459; Kennedy v. Lonabaugh, 19 Wyo. 352, 117 Pac. 1079, Ann. Cas. 1913E, 133; Hoge v. George, 27 Wyo. 423, 200 Pac. 96, 18 A.L.R. 469; Lemon v. Little,

21 S. D. 628, 114 N. W. 1001; Smith v. David B. Crockett Co. 85 Conn. 282, 82 Atl. 569, 39 L.R.A.(N.S.) 1148, supra; 2 Pom. Equity Jur. (4th Ed.) § 940, and cases cited; Leland v. Ford, 245 Mich. 599, 223 N. W. 218, and cases therein cited.

In the Leland Case, the court said: "May the defendants in this action urge that the contract sought to be enforced and to which they were parties is invalid, because contrary to public policy and because fraudulent? The case is in equity, but the maxim, 'He who comes into equity must come with clean hands,' does not apply to defendants; they have not come into a court of equity seeking any relief; they were brought there by plaintiffs."

There is some argument directed to the claim that the Minneapolis Threshing Machine Company ratified the transaction between the plaintiff and the defendant. The company's manager claimed that the matter came to his attention for the first time when the plaintiff sued the defendant. When asked whether the company had any objection to that transaction, he answered: "would have, had I known it. Q. What difference would it make to you? A. Well, we are supposed to guard against that. Q. As a matter of fact Mr. Mees explained it all to you in 1923? A. No, sir."

While there is some testimony on the part of the plaintiff to the effect that he discussed the matter with the company's manager, the time and character of such discussion is left in doubt; but as said in Atlee v. Fink, 75 Mo. 100, 42 Am. Rep. 385, supra: "The ratification of the contract would not have eliminated the element which rendered it invalid."

Justice Swayne, in Coppell v. Hall, 7 Wall. 542, 19 L. ed. 244, said: "Whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case. No consent of the defendant can neutralize its effect. A stipulation in the most solemn form to waive the objection would be tainted with the vice of the original contract, and void for the same reason."

But assuming, for sake of argument, that the plaintiff brought some knowledge or information of his double agency to his employer, that would not, without actual consent on the part of his employer, entitle him to recover the commissions here claimed. Bell v. McConnell, 37 Ohio St. 396, 41 Am. Rep. 528; Law v. Billington, 180 Pa. 84, 36

Atl. 402; Alta Invest. Co. v. Worden, 25 Colo. 215, 53 Pac. 1047; Shelton Implement Co. v. Schieck, 81 Neb. 826, 116 N. W. 951; Jameson v. Coldwell, 25 Ore. 199, 35 Pac. 245.

The transaction in question is inconsistent with fair and honorable dealing, contrary to sound policy, and offensive to good morals. We are, therefore, of the opinion that the plaintiff is not entitled to recover in this case. For the reasons mentioned, the judgment will be reversed, and the action ordered dismissed.

CHRISTIANSON, Ch. J., and BIRDZELL, NUESSLE and BURR, JJ., concur.

BURKE, J., did not participate. Hon. M. J. ENGLERT, Judge of the First Judicial District, sitting in his stead.